## THE INDIANA BITUMINOUS COAL COMPANY v. BUFFEY.

### [No. 4,022. Filed December 18, 1901.]

MASTER AND SERVANT.—*Personal Injuries.*—*Defective Appliances.*—*Complaint.*—A complaint by a mine employe for personal injuries sustained by reason of a defective pulley used to lower and raise a bucket in the removal of dirt and other substances from the shaft in which plaintiff was at work, which avers that the pulley was wholly insufficient and inadequate in size and strength to hoist the bucket and contents, and that the insufficiency and inadequacy were so located and concealed that plaintiff could not, and did not, see or discover the same, and had no knowledge thereof, and that defendant knew that the pulley was wholly unfit and unsafe by reason of its smallness in size and inherent weakness, is sufficient as against demurrer. *p. 109.*

TRIAL.—*Special Finding.*—*Verdict.*—*Master and Servant.*—*Personal Injuries.*—Answers to interrogatories in an action by a mine employe for personal injuries caused by a defective pulley used in hoisting dirt from the shaft in which plaintiff was at work, that defendant in procuring the use of the pulley did not exercise ordinary care and prudence, and that plaintiff in remaining where he was when hurt did exercise proper care and prudence are not parts of a special verdict and add nothing to a general verdict for plaintiff. *p. 111.*

SAME.—*Interrogatories.*—An interrogatory in an action for personal injuries which asks whether plaintiff, at the time, was exercising any watchfulness or precaution, or whether he took any thought in the way of looking out for or protecting himself, calls for a conclusion on the part of the jury. *p. 113.*

SAME.—*Interrogatories.*—*Answers.*—*General Verdict.*—Where an interrogatory contains more than one question, and the answer of the jury may be properly applied to each question, one of which would be consistent with the general verdict and the other in

Indiana, etc., Coal Co. v. Buffey.

conflict with it, the interrogatory and answer will be given that construction which will sustain the general verdict. *p. 114.*

TRIAL.—*Interrogatories.—Master and Servant.—Personal Injuries.—Knowledge of Danger.*—In an action by a mine employe for personal injuries sustained by reason of a defective pulley used in hoisting buckets from a shaft in which plaintiff was at work, answers to interrogatories to the effect that upon an examination of the pulley, its general appearance would have suggested its defectiveness and insufficiency are not sufficient to overcome a general verdict for plaintiff, where it was shown that the pulley hung ten feet above the top of the shaft and that plaintiff was injured the first day of his employment. *pp. 114, 115.*

EVIDENCE.—*Expert Testimony.—Defective Appliances.—Master and Servant.*—In an action by an employe for personal injuries sustained by reason of a defective pulley it was not error to permit a witness to testify that a pulley similar to the one used was not a suitable and proper appliance with which to do the work in question. *p. 115.*

MASTER AND SERVANT.—*Personal Injuries.—Defective Appliances.—Instruction.*—An instruction in an action by a mine employe for personal injuries caused by a defective pulley used in hoisting buckets from a shaft in which plaintiff was at work authorizing a recovery, if the proof showed that the pulley was defective as alleged in the complaint and that defendant knew of the defect, or by the exercise of ordinary care could have known of the defect and insufficiency thereof, was erroneous, since it devolved upon plaintiff to prove, not only that he had no knowledge of the defect, but that, by the exercise of ordinary care, he could not have known it. *pp. 115, 116.*

From Fountain Circuit Court; *J. V. Kent*, Special Judge.

Action by Samuel Buffey against the Indiana Bituminous Coal Company for personal injuries. From a judgment for plaintiff, defendant appeals. *Reversed.*

*L. Nebeker* and *C. M. McCabe*, for appellant.
*O. P. Lewis, J. F. Ashley* and *J. A. Lindley*, for appellee.

ROBINSON, P. J.—Appeal from a judgment in favor of appellee for damages for a personal injury. Errors are assigned upon the overruling of a demurrer to the complaint, of appellant's motion for judgment on the answers to interrogatories, and of appellant's motion for a new trial.

The complaint avers that appellant was engaged in sink-

ing a shaft at its mines; that the excavation was sixteen feet long and eight feet wide, divided by a wooden partition into compartments eight feet square and fifteen feet deep; that dirt and other substances were removed from the bottom of the shaft in a bucket holding forty gallons, which was operated with a rope and pulley attached to a derrick, so arranged as to raise and lower the bucket in the center of the compartment in which appellee was at the time working; that over the top of the shaft was a track upon which cars were run to receive the contents of the bucket when it was hoisted above the top of the shaft; that appellee entered appellant's employ on the 25th day of June, 1899, and, on that day, while he was engaged in the line of his employment, having filled the bucket, and the same having been hoisted to the top, and while hanging above the shaft until a car could be placed to receive its contents, the small cast pulley, to which the rope and bucket were attached, broke, dropping the bucket and contents into the shaft, striking appellee and injuring him; that the pulley was defective and wholly insufficient and inadequate in both size and strength, as appellant knew, to withstand the strain placed upon it, and to do and perform the work necessarily required of it, and to which it was subjected in hoisting the bucket and contents, but that its "defectiveness, insufficiency, and inadequacy were so located and concealed that plaintiff could not and did not see or discover the same, and that plaintiff had no knowledge thereof"; that appellee relied upon the sufficiency and safety of the appliance furnished by appellant; that the pulley was unfit and unsafe by reason of its smallness in size and inherent weakness as appellant knew. The averments concerning the defect are that the pulley was wholly insufficient and inadequate in both size and strength to hoist the bucket and contents, which appellant knew, and that this insufficiency and inadequacy in both size and strength were so located and concealed that appellee could not and did not see or discover

the same, and had no knowledge thereof, and that appellant knew that the pulley was wholly unfit and unsafe by reason of its smallness in size and inherent weakness.

The defect charged was not an open and obvious one. It was not such a defect as that both the master and servant are equally chargeable with knowledge of its existence. The appearance of the appliance was not such as would necessarily suggest that it was deficient in the manner charged. The inherent weakness of the pulley would not necessarily result only from its smallness in size. The averment in this particular could have been more specific, had such a request been made. The pulley was not unsafe simply because of its smallness in size, but also because it was inherently weak. Nor can we say, from the averment as to the time appellee had been in the service, that he must have necessarily known the size of the pulley. As against a demurrer we think the complaint is sufficient. *Cincinnati, etc., R. Co. v. Roesch*, 126 Ind. 445; *Bradbury v. Goodwin*, 108 Ind. 286; *Indiana Car Co. v. Parker*, 100 Ind. 181.

When the jury say, by answers to interrogatories, that appellant, in procuring and using the pulley, did not exercise such care and prudence as men of ordinary care and prudence would exercise under like circumstances, and that appellee, in remaining where he was when hurt, did exercise such care and prudence as persons of ordinary care and prudence would exercise under like circumstances, they are doing nothing additional to what they have already done in the general verdict in appellee's favor. These questions and answers are not parts of a special verdict.

The jury were asked, "Was there any urgent, pressing, or reasonable necessity for plaintiff to be where he was when he was hurt, and, if so, what was that necessity, and why was it so necessary?" The jury answered, "To perform his work." It can not be said, as argued, that the answer is indefinite and meaningless. An affirmative answer to the first part of the question is necessarily implied in the

answer given, which is pertinent to the last part of the question. If the interrogatory had been put in two questions, the second could not have been answered as it was unless the first had been answered in the affirmative.

It appears that appellee began work in the shaft about seven o'clock in the morning of June 25, 1899, and was injured between one and two o'clock that day while working in the east compartment. The bucket was filled and was hoisted to the top over the center of the east compartment, but before the car could be pushed under it the pulley broke and the bucket fell, striking the end of the car, and passed on to the bottom of the shaft, "glancing on plaintiff's shoulders." It is argued that the answers show that while the bucket was being hoisted appellee showed, by the position he occupied, such disregard for his own safety as amounts to contributory negligence. These questions and answers are: (29) "When said bucket fell, did it strike about the center of the said east part or compartment of said shaft, and, if not, how near to such center did it fall? Ans. About two feet from the center." (30) "When said bucket struck plaintiff, was it on a direct line of descent from where it started, and, if not, how far was it out of such direct line? Ans. About two feet from the center." (31) "Was plaintiff directly under said pulley when it broke, and, if not, how far was he from a direct downward line therefrom? Ans. About two feet from the center." (32) "Was plaintiff directly under said bucket, or any part of it, when said break occurred, and, if not, how far was he to being under the same or part thereof? Ans. About two feet." From these and other findings it appears that when the bucket was raised above the top of the shaft it hung over the center of the east compartment, and that when the break occurred, if the bucket had met no obstructions, it would have struck in the center of the bottom of that compartment. But the thirty-second interrogatory and answer show that when the break *occurred*, appellant was not stand-

ing directly under the bucket *or any part* of it, but was about *two feet away*. It is clear that appellee, when hurt, was not standing in the center of the compartment, although the findings do not make clear his exact position, nor do they make clear the exact place where the bucket struck the bottom with reference to the sides or corners of the compartment. But giving these interrogatories a reasonable construction which will harmonize them with the general verdict—and such construction must be given them if it can be done—a mathematical calculation will demonstrate that appellee may have been standing in a place that an ordinarily prudent man, under the circumstances, would have selected, and still have been struck as he was. As the answers do not show that he was not standing in such a place, the general verdict in appellee's favor that he was not guilty of contributory negligence in this regard must stand. And when the uncertainty of appellee's location and the indefiniteness of the spot where the bucket struck relative to the corners and sides of the compartment, as disclosed by these answers, are taken into consideration, we think the jury, when asked if appellee had been standing against any one of the corners of the east compartment when the pulley broke "would he have received any injury whatever", might answer, as they did, that they did not know. An interrogatory which asks whether appellee, at the time, was exercising any watchfulness or precaution or care or whether he took any thought in the way of looking out for or protecting himself, calls, in part at least, for a conclusion on the part of the jury. What would amount to an exercise of watchfulness, precaution, and care would depend upon what appellee was at the time actually doing in that regard. His conduct at the time might or might not be said to amount to care, and the like. A negative answer to such an interrogatory is not necessarily the statement of a fact. He may at the time not have been thinking about any danger. It is not shown that there was anything to call his attention to

any immediate danger. It is found as a fact that to perform his work it was necessary for him to be where he was when he was hurt, and the evidence shows he was at the time digging a hole to collect the water in the shaft that it might be bailed out, to do which was a part of his duty. An interrogatory should contain a single question. And if it contains more than one question, and the answer of the jury may be properly applied to each question, one of which would be consistent with the general verdict and the other in conflict with it, the interrogatory and answer will be given that construction which will sustain the general verdict.

It is also argued that the answers show that the defect in the pulley was obvious and apparent, could have been discovered by appellee by the exercise of ordinary care, and that the risk was therefore assumed. (16) "Was the said pulley hung upon a stem attached to a ring, and was said stem attached to said pulley, and having on the end thereof an enlargement or bulb enclosed in an opening which closed said enlargement or bulb and fit around said stem, and did the break of said pulley consist of the said enlargement or bulb breaking off of the end of said stem? Ans. Yes." The jury answered that the block or pulley was insufficient in size, material, and strength. (20) "Could such defect or insufficiency have been discovered, except by breaking and destroying said pulley, and, if so, how? Ans. Yes, by general appearances." (25) "Was said pulley, on said day, at all times plainly in the view of any one going into said shaft and would not the size, kind, and make of said pulley be obvious and apparent to anyone who looked at it from the top and at the edge of said shaft? Ans. Yes." (26) "Was there, on said day, anything about the appearance of said block, or anything that could be discovered without breaking or destroying it, that would indicate that it was insufficient for the purpose of hoisting said buckets to said shaft, and, if there was anything, what was it? Ans. Yes,

by its general appearance." The twentieth and twenty-sixth interrogatories and answers evidently mean that, upon an examination of the pulley, its general appearance would have suggested its defectiveness and insufficiency, and that it was insufficient for the purposes for which it was used. The pulley hung about ten feet above the top of the shaft, and as appellee went into the shaft in the morning and came out at noon and went back in the afternoon he could have seen its size, kind, and make, but these would not necessarily have suggested the insufficiency in size, material, and strength, which the general appearance would have suggested to a person making an examination of it. It was no part of appellee's duty to look for latent defects, but it was appellant's duty to look for such defects. The defect was not one equally open to appellant and appellee.

There was no error in permitting expert witnesses to testify that a pulley which was exhibited to them was not a suitable and proper appliance with which to do certain specified work. We presume the pulley shown the witnesses was like the one in question, as no objection was made on that ground. It is true the general rule is, subject to some exceptions, however, that a witness may not give an opinion upon the exact point in issue. But we fail to see how it can be said that the evidence in question can come within this rule. The sufficiency or insufficiency of the pulley was only one of several questions the jury had to decide. No reason is assigned by counsel why this evidence was not admissible under the general rules admitting expert testimony. See, *Bonebrake* v. *Board, etc.*, 141 Ind. 62; *Diamond, etc., Coal Co.* v. *Edmonson*, 14 Ind. App. 594.

The twenty-eighth instruction reads as follows: "Defective appliance. Proof must follow the allegation of complaint. In order to recover in this action, the plaintiff must establish, by a fair preponderance of the evidence, that the defendant was guilty of the particular acts of negligence charged in the complaint, namely, that the defendant

furnished and caused to be used in the performance of the work in which plaintiff was engaged, a defective and insufficient pulley, and that such defect and insufficiency in said pulley consisted in its small size or inherent weakness; that the pulley broke in consequence thereof, and caused plaintiff's injury, and that the defendant knew, or by the exercise of ordinary care could have known, of the defect and insufficiency of such pulley; and, if the evidence fails to establish these facts, there can be no recovery. But if the evidence does establish these facts, then the plaintiff is entitled to your verdict."

Under the averments of the complaint that the pulley was insufficient and inadequate in size and strength, which appellant knew, and of which appellee had no knowledge, appellee was required to prove not only that he had no knowledge of the defect, but that, by the exercise of ordinary care, he could not have known it. If appellee knew the pulley was insufficient and inadequate in size and strength to lift the weight placed upon it, and he voluntarily continued in the employment, without any promise on appellant's part to replace it with a sufficient pulley, he assumed the risk incident thereto. The instruction plainly tells the jury that they may find for appellee if the facts stated in the instruction are established by the evidence, without any reference to actual or constructive knowledge of appellee. Upon the authority of *Pennsylvania Co.* v. *Ebaugh*, 152 Ind. 531, and *Chicago, etc., R. Co.* v. *Glover*, 154 Ind. 584, this instruction must be held erroneous.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.