MAY TERM, 1913.                    619

Kelly Atkinson Constr. Co. *v.* Munson—53 Ind. App. 619.

## Kelly Atkinson Construction Company *v.* Munson, Administratrix.

[No. 7,852.   Filed April 15, 1913.   Rehearing denied June 19, 1913.]

1. Pleading.—*Complaint.—Demurrer.—Admissions.*—A demurrer to a complaint admits that all facts well pleaded are true. p. 623.

2. Master and Servant.—*Injuries to Servant.—Unsafe Machinery.—Negligence of Fellow Servant.—Complaint.*—A complaint in an action for personal injuries to an employe is not insufficient on the theory that the injury was caused by the negligence of a fellow servant, where it appears from its averments that the injury was caused by the combined negligence of the master in supplying unsafe machinery and of a fellow servant in the operation of the same, since the master is relieved from liability only when he has exercised reasonable care and prudence in supplying safe machinery and the injury occurs solely through the negligence of the fellow servant. p. 623.

3. Master and Servant.—*Injuries to Servant.—Unsafe Machinery.—Complaint.—Sufficiency.*—A complaint to recover for the death of one employed in elevating a railroad track, by the slipping of a derrick cable from the drum while a heavy girder was being put in place, alleging that the cable was not safely and properly attached to the drum and was not of sufficient length to safely perform the work for which it was used, of which defendant had knowledge and of which plaintiff was ignorant, and that defendant's superintendent ordered the starting of the engine when the cable was unwound from the drum, charged actionable negligence on the part of defendant and was sufficient to withstand a demurrer. p. 624.

4. Master and Servant.—*Injuries to Servant.—Negligence of Fellow Servant.—Evidence.*—In an action for the death of an employe engaged in track elevation work, by the slipping of a derrick cable from the drum while a heavy girder was being placed, evidence which, though showing that decedent and the engineer who operated the derrick engine had previously worked with such derrick, also shows that they had no knowledge of the defective method in which the cable was attached to the drum and had no opportunity of learning that it was defectively attached or that it was of insufficient length to properly handle such girder, affords no support to defendant's theory that the engineer, who was operating pursuant to signals from the superintendent, was, in operating the engine when the cable had been unwound from the drum, guilty of the negligence which caused the death. p. 624.

5. MASTER AND SERVANT.—*Injuries to Servant.—Defective Appliances.—Evidence.—Sufficiency.*—In an action for the death of a servant by the slipping of a derrick cable from the drum while a heavy iron girder was being placed, evidence showing that the cable was defectively attached to the drum·and was of insufficient length to properly handle such girder, and that such cable and its fastening to the drum had not been inspected during eighteen months previous to the injury, and also showing that while decedent had previously worked about such derrick, he had no knowledge of such defects, and that neither he nor the engineer, who operated the derrick engine pursuant to signals from the superintendent, had any opportunity to learn of such defects, was sufficient to sustain a verdict for plaintiff.  p. 624.

6. MASTER AND SERVANT.—*Injuries to Servant.—Defective Appliances.—Fellow Servants.—Instructions.*—In an action for the death of an employe by the slipping of a derrick cable from the drum, where there was evidence that the cable was of insufficient length and that it was defectively attached to the drum, an instruction stating that the persons who were at the time engaged in moving a girder by means of such derrick were fellow servants, and that defendant would not be liable if the injury was caused by their negligence, was properly refused because it ignored the element of the master's negligence with reference to the defective method in which the cable was attached to the drum.  p. 626.

7. MASTER AND SERVANT.—*Injuries to Servant.—Vice-Principals.—Instructions.*—In an action for the death of a servant, where there was evidence to show that a part of the duties devolving on the foreman required him to furnish defendant's employes with reasonably safe tools and a reasonably safe place in which to. work, a requested instruction as to the negligence of fellow servants which would indicate to the jury that, although such foreman was negligent in performing a duty owing by the master and such negligence assisted in producing the injury, defendant would not be liable, was properly refused.  p. 626.

8. APPEAL.—*Review.—Refusal of Instructions.*—Requested instructions not applicable to the evidence, or which ignore the evidence on a material element of the case, are properly refused.  p. 627.

9. APPEAL.—*Review.—Instructions. — Joint Exceptions.* — Alleged error in the giving of instructions will not be considered where the exception thereto was a joint exception and appellant makes no claim of error except as to one of such instructions.  p. 627.

10. MASTER AND SERVANT.—*Injuries to Servant.—Defective Machinery.—Evidence.—Admissibility.*—In an action for the death of an employe caused by the slipping of a derrick cable from the drum while a heavy girder was being placed, where it was

charged that the cable was defectively attached to the drum and was too short for the proper handling of such girder, testimony of experts as to the proper manner of fastening cables to the drums of derricks, the method of safe operation, and as to the suitable length of a cable under the conditions shown, was properly admitted, since they were matters about which such witnesses had peculiar knowledge and as to which they were competent to testify. p. 628.

11.   EVIDENCE.—*Weight and Sufficiency.—Expert Testimony.*—The weight to be given to expert testimony is for the jury to determine. p. 628.

From Franklin Circuit Court; *George L. Gray,* Judge.

Action by Bessie Munson, administratrix of the estate of Fred W. Munson, deceased, against the Kelly Atkinson Construction Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Zane, Morse, McKinney & McIlvaine, Shope, Zane, Busby & Weber* and *Bracken & Kidney,* for appellant.

*David K. Tone, Henry M. Ashton* and *George F. O'Byrne,* for appellee.

IBACH, C. J.—Appellee as administratrix of the estate of Fred W. Munson, her deceased husband, began this suit against appellant in the Marion Circuit Court to recover damages for negligently causing his death. A change of venue was taken to Franklin County, where trial by jury resulted in a verdict and judgment in favor of appellee for $4,800.

The overruling of separate demurrers for want of facts to each of the two paragraphs of complaint is assigned as error. Decedent was employed by appellant to assist in the work of elevating the tracks of the Big Four railroad over Washington street in the city of Indianapolis, and while engaged at his work, he was killed by reason of a cable, which held suspended a heavy steel girder, becoming detached from the "drum" of the derrick, thereby causing the girder to fall upon him. In substance, the averments of the first paragraph of complaint, so far as they are mate-

rial to be stated here, are that the defendant had as a part of its machinery used in the work of elevating the tracks a steam derrick permanently fastened upon what is termed a "derrick car". This derrick consisted in part of a drum eighteen inches in diameter, which revolved by means of power supplied from an engine; when the drum revolved the wire cable or rope attached at one end to the drum and at the other to "blocks" would become wound upon the drum or released therefrom, according to the manner in which such power was applied. Attached to the "block" were "grabs" which gripped the girders and other heavy articles which were to be elevated and placed in their proper position. The cable or rope was fastened to the drum by means of a rod or hook bolt. "Said cable was then and there insecurely and improperly attached to said hook and to said drum and when heavy material was then and there being hoisted by said derrick and when said cable was then and there unwound from said drum so that very little cable remained on said drum, said cable was then and there apt to and liable to pull off and slip off from said hook and become detached and disconnected from said drum." There was knowledge of all these conditions on the part of appellant, and a want of knowledge on the part of decedent. "Owing to the insufficient and improper manner in which said cable was then and there fastened to said drum, it was then and there unsafe and dangerous to then and there start the engine in motion, and to either raise or lower said girder." Appellant's superintendent who was in charge of the work and its representative, whose order decedent was required to obey, with knowledge of the improper cable attachment, directed the work to proceed, and while plaintiff's decedent, in ignorance of the said insecure fastening was assisting in removing said girder, said cable pulled loose from said drum, wholly on account of appellant's negligence, causing the girder to fall, killing decedent. These allegations, when considered with all the other averments of the complaint,

make it apparent that this paragraph proceeds upon the theory that appellant was negligent in failing to securely fasten the cable to the drum. The same facts are pleaded in the second paragraph, with the additional charge that the "defendant carelessly and negligently supplied the crane with a cable that was then and there too short and not of sufficient length."

It is insisted by appellant that the averments of the complaint show that decedent was killed solely through the negligent operation of the derrick. This, however, does not appear from the complaint. The complaint charges that the accident happened by reason of the negligence of the master in furnishing unsafe and defective machinery, and negligence in permitting the entire length of cable to become unwound from the drum, the engineer operating the engine in accordance with the signals and orders given by appellant's superintendent, all of which facts, being well pleaded, the demurrer admits to be true.

Complaints similar in most respects to the one before us have been uniformly supported by the courts of this and other jurisdictions, where the averments make it appear that the injury occurred to the employe through the combined negligence of the master in supplying unsafe machinery, and of a fellow servant in the operation of the same. It is only when the master has exercised reasonable care and prudence in supplying tools and appliances to his employes which are reasonably safe and proper for the service required of him, and the injury occurs solely through the negligence of a fellow servant, that the master will be held blameless. *Ohio, etc., R. Co.* v. *Stein* (1894), 140 Ind. 61, 69, 39 N. E. 246; *Rogers* v. *Leyden* (1891), 127 Ind. 50, 53, 26 N. E. 210; *Eureka Block Coal Co.* v. *Wells* (1902), 29 Ind. App. 1, 61 N. E. 236, 94 Am. St. 259.

We have already indicated that the specific charges of negligence pleaded against appellant as the cause of the death of decedent are that the cable was not safely and prop-

erly attached to the drum, that the cable was not of sufficient length to safely perform the work for which it was used, and that an order was given to start the engine when the cable was unwound from the drum. These averments charge actionable negligence on appellant's part. The complaint was sufficient to withstand demurrer. See *Clear Creek Stone Co.* v. *Dearmin* (1903), 160 Ind. 162, 66 N. E. 609.

The evidence discloses that just prior to the killing of Munson, appellant had been engaged in constructing bridges for the Big Four railroad at other points outside of Indiana, and about twelve days before the accident resulting in Munson's death, he had been hired by one Beck, who, it is shown was appellant's superintendent, and was also in charge of and directed the work at Indianapolis. Munson, with other laborers, had used the same derrick and appliances at Fairland, Indiana, but he had nothing whatever to do with the operation of any of the machinery, or with fastening the cable to the drum. Beck provided all the machinery, tools and appliances, and generally supervised the work, both at Indianapolis, and at other points prior to moving the machinery to Indianapolis. The girder which was being moved when Munson was killed weighed about seventeen and one-half tons, and required three blocks and a long and heavy cable to handle it. Prior to the accident girders weighing only two tons had been handled, and in handling them only about one-half of the length of cable was used, thus allowing the remaining half to be wound about the drum. At this point we may add that, on account of this fact alone, neither Munson nor the engineer, Burgess, had any opportunity to ascertain the length of the cable or the manner in which such cable was attached to the drum, and it appears nowhere in evidence that either of these men obtained any knowledge of such facts from any source. Consequently, the insistence made by appellant that Burgess was guilty of the negligence

which caused Munson's death has no support from the evidence. The engineer also testified that the reason he did not see the cable run off the drum was because he had his head out of the window on the side of the derrick car receiving the signals controlling the operation of the derrick, and it could not be operated in any other manner, that it was only by these signals that he could learn the order of the superintendent, and operate his engine in conformity to such orders. Expert witnesses testified that the safe and proper way to attach a cable to the drum of a derrick was by using a cable clamp or U bolt with the cable put through the clamp and the nuts tightly screwed on. The cable in the case at bar was not so fastened, but was merely put through a hook where it was liable to slip out. Burgess the engineer said: "If the cable was fastened with a hook bolt at the time of the accident, it was liable to pull out, but if fastened by a clamp it would not, the cable would break first." Witnesses of long experience with this class of work testified that a suitable cable to be used in lifting the girder in suit should be long enough to reach the ground when working the boom from the highest to its lowest point, and leave seven or eight coils about the drum. Mr. Kelly, appellant's president, testified that the standard length of the cable for such work was 450 or 475 feet. This cable, however, was but 350 feet long. Superintendent Beck admitted that "if the derrick had been supplied with a cable 450 feet in length the load which was being lifted could have been lowered to the ground." The evidence also shows that this same superintendent ordered decedent, with another laborer, Lawrence, who also was killed, to put ties under the girder while it was suspended, that while they were obeying this order, he, Beck, gave the signal to the engineer to start the derrick. There was an outcry, the two men started to run away, but before they had time to escape, the girder fell. It is also shown by Mr. Kelly, appellant's president, that the last time the cable

and its fastening to the drum were examined was eighteen months before the accident. The evidence is sufficient to sustain the verdict.

It is argued that the court erred in the giving of and refusal to give certain instructions. Appellant insists that the court erred in refusing to give to the jury its requested instructions Nos. 1, 3 and 4. Instruction No. 3 is as follows: "The court instructs the jury that the members of the gang of men engaged upon the girder as set out in plaintiff's complaint were fellow servants while they were engaged in moving said girder, and this applied to the foreman Beck, the pusher Lawrence, and the engineer Burgess, and if the jury believe from the preponderance of the evidence that the death of the plaintiff's intestate, the deceased, Fred W. Munson, was occasioned by the negligence or carelessness or either of said Beck or said Lawrence or said Burgess, or either or all of them, the jury should find for the defendant." This instruction as applied to the facts of this case must be held to be erroneous, and it was properly refused, for the reason that it ignores the very material fact shown by the evidence that one of the contributory causes of the decedent's death was the defective and unsafe manner in which the cable was fastened to the drum, which fact, if shown by a fair preponderance of the evidence, would authorize a finding of negligence against appellant, even though the fellow servants of decedent also contributed to bring about the result which did follow.

This instruction was erroneous for the further reason that by it the jury was told that in any event there could be no recovery on account of the negligence of Beck the superintendent or the person representing appellant in the direction of the work. There was evidence to show that as a part of the duties devolving upon Beck he was to furnish appellant's employes with reasonably safe tools and a place to work which was also reasonably safe, and yet, in view of the evidence, upon this proposition, the in-

struction would indicate to the jury that although Beck was negligent in performing a duty owing on the master's part, whom he represented as a vice-principal, and such failure on his part assisted to bring about the fatal accident, yet appellant would not be liable.

Instructions Nos. 1 and 4 tendered were likewise properly refused because improper as applied to the facts of this case, and in each instance eliminating all evidence

8. with reference to the defective condition of the appliances furnished by appellant with which decedent was required to work. There is no evidence that a cable of sufficient length was supplied by appellant, and that the derrick was equipped with a shorter one by a fellow servant of decedent without the knowledge or direction of appellant. The fourth is additionally defective because it states that if the derrick was operated in a careless manner by the engineer, there could be no recovery, whether such machinery was reasonably safe for the work in which they were engaged, or not. Similar instructions to these were held insufficient in the case of *Ohio, etc., R. Co.* v. *Stein, supra.*

The further error assigned "that the court erred in giving instructions Nos. 5 and 7" will not be considered. The exception taken to the giving of these instructions was

9. a joint exception, and not a separate exception as to each. No claim is here made that instruction No. 7 is erroneous, and in fact, it is a correct statement of the law applicable to the pleadings and the evidence. See *Inland Steel Co.* v. *Smith* (1907), 168 Ind. 245, 252, 80 N. E. 538, and cases there cited. We have examined all of the instructions tendered and refused, and those given, and we are convinced that the law applicable to the case was correctly stated to the jury in the numerous charges given, both at appellant's request, and on the court's own motion.

It is also contended by appellant that there was error at the trial in the admission of certain expert testimony. The testimony earnestly objected to is that given by three wit-

nesses who testified as to the proper manner of fastening cables to the drums of derricks, how "booms", such as the one described in the case, could be operated with safety, and what a suitable length of cable would be under all the conditions shown by the proof and for the accomplishment of the work in which appellant was engaged. These were matters largely of science and skill, and of which, by study, observation and experience, the witnesses had obtained and were possessed of peculiar knowledge. They were matters also about which the average jury could not become informed so as to arrive at an accurate conclusion without the aid of the testimony of such persons as had given the subjects their special thought, time and attention. We believe these witnesses were competent to testify, and the investigation of the subject-matter in controversy required the aid of such testimony to assist in giving to the jury facts essential to a proper solution of the questions involved. It was for the jury to determine the weight of such testimony. *Indiana, etc., Coal Co.* v. *Buffey* (1901), 28 Ind. App. 108, 62 N. E. 279; *Louisville, etc., R. Co.* v. *Frawley* (1887), 110 Ind. 18, 9 N. E. 594.

We find that no error was committed at the trial, and the judgment is affirmed.

NOTE.—Reported in 101 N. E. 510. See, also, under (1) 31 Cyc. 333; (2) 26 Cyc. 1302; (3) 26 Cyc. 1386; (4) 26 Cyc. 1454; (5, 7) 26 Cyc. 1447; (6) 26 Cyc. 1474, 1477; (8) 38 Cyc. 1617, 1627; (9) 38 Cyc. 1795, 1800; (10) 17 Cyc. 232; (11) 17 Cyc. 262. As to what are proper subjects of instructions to jury, see 72 Am. Dec. 538. As to duty of master to furnish servant with safe means and appliances to work with, see 92 Am. Dec. 213; 21 Am. Rep. 579; 33 Am. St. 766. As to instructions of court assuming existence of facts, see 14 Am. St. 44. As to basis of rule of assumption of risk, see 131 Am. St. 437. As to assumption of risks of dangerous machinery, see 119 Am. St. 434. As to the subjects and admissibility of expert testimony, see 66 Am. Dec. 228. On the question of the master's liability for failure of employes exercising superintendence to furnish proper appliances, see 58 L. R. A. 46. As to the liability of a master to his servant for injuries caused by a derrick, see 20 Ann. Cas. 896.