ZOLLMAN *v*. BALTIMORE AND OHIO SOUTHWESTERN
RAILROAD COMPANY.

[No. 9,269.  Filed December 11, 1918.  Rehearing denied March 27,
1919.  Transfer denied June 5, 1919.]

1. APPEAL.—*Review.—Judgment.—Exceptions.—Necessity.*—Where
the verdict was in general terms in favor of defendant, judgment
that plaintiff take nothing, and that defendant recover costs,
would follow as a matter of course, and no exception to the
judgment was required in order that plaintiff be protected in his
rights.  p. 399.

2. APPEAL.—*Review.—Judgment.—Exceptions.—Necessity.*—Where
the judgment is proper in form and in substance as measured by
the verdict or finding, the question of its correctness, as measured
by the cause and procedure, is tested by exceptions reserved to
rulings preceding the rendering of judgment, and properly pre-
sented.  p. 399.

3. APPEAL.—*Scope of Review.—Questions Not Necessary to Deci-
sion.*—Where appellant did not avail himself of extended time
granted on application under §661 Burns 1914, Acts 1911 p. 193,
for filing bill of exceptions, the sufficiency of the notice of the
hearing on the application or service thereof need not be deter-
mined on appeal.  p. 401.

4. APPEAL.—*Record.—Bill of Exceptions.—Time for Filing.*—Where
a bill of exceptions containing the evidence discloses that it was
presented to the judge within the ninety days allowed for filing,
that is sufficient, although the bill was not filed until after the
expiration of the ninety days.  p. 401.

5. APPEAL.—*Record.—Bill of Exceptions.—Conclusiveness.*—A va-
cation entry that the bill of exceptions containing the evidence
was presented to the judge on a certain day is controlled by a
recital in the bill that it was presented at an earlier day, there
having been no steps taken to correct the error, if any, in the bill.
p. 402.

6. APPEAL.—*Record.—Instructions.—Filing.—Bill of Exceptions.*—
Where a bill of exceptions discloses that it is proper in form and
substance, and that it contains all the instructions that were
tendered and refused, etc., and it appears from an order-book
entry that the bill was filed on the day that the trial closed, the
filing of the bill was a sufficient filing of the instructions to make
them part of the record.  p. 402.

7. APPEAL.—*Bill of Exceptions.—Time of Signing and Filing.—Presumption.*—Although it is essential to the validity of a bill of exceptions that it be filed after, rather than before, it has been signed, yet where it appears that there was no default respecting the time of filing and that the bill was filed on the day it was signed, the latter act is presumed to have preceded the former. p. 403.

8. APPEAL.—*Instructions.—Incorporating in Record.—Method.*—The various other statutory methods of making instructions a part of the record in a civil action are not exclusive of the method by bill of exceptions. p. 403.

9. APPEAL.—*Scope of Review.—Questions Not Necessary to Decision.*—The instructions being properly in the record, it is not necessary for the court on appeal to determine whether they were made part of the record by other methods attempted, or whether the statute was complied with in that respect. p. 403.

10. APPEAL.—*Briefs.—Questions Presented.—Motion for New Trial.*—Questions raised under the motion for new trial will be considered on appeal, although the motion is not set out in full in appellant's brief, where the substance of the grounds relied on is set out. p. 403.

11. APPEAL.—*Briefs.—Sufficiency.*—Where appellant's briefs, regardless of criticism respecting form and substance, are sufficient to present a number of questions on the merits of the case, such questions will be considered. p. 404.

12. WATERS AND WATERCOURSES.—*Natural Watercourse.—Obstructing.—Liability.*—Waters in the low-water channel, waters heaped about them, and waters that overspread the high-water channel, are, when flowing down stream in one uniform and continuous current, where unobstructed by the act of man, the waters of a natural watercourse, and liability for obstructing the flow thereof must be determined from a consideration of the law governing the obstruction of a stream rather than that governing in the case of mere surface water. p. 407.

13. RAILROADS.—*Obstruction of Stream.—Liability.—Instruction.—Unusual and Extraordinary Flood.*—In an action against a railroad for unlawfully obstructing the flood waters of a river, an instruction that plaintiff could not recover, if the damage was caused by a flood which was unusual and extraordinary, was erroneous, since, by reason of the comprehensiveness and flexibility in meaning of the terms "extraordinary" and "unusual." the use of such words unqualified and unexplained outlined a defense broader than the law recognizes. p. 410.

14. RAILROADS.—*Obstruction of Stream.—Unusual and Extraordinary Flood.—Liability.*—In an action against a railroad for neg-

ligently and unlawfully obstructing the flood waters of a river, although the flood that concurred with defendant's acts was unusual and extraordinary in nature, defendant is liable if the concurrence of the flood might have been anticipated by the exercise of reasonable skill and foresight. p. 410.

15. RAILROADS.—*Obstruction of Stream.—Unprecedented Flood.— Liability.*—The mere fact that a flood is unprecedented cannot be said, as a matter of law, to form the basis of an escape from liability by one negligently and unlawfully obstructing a stream. p. 411.

16. WATERS AND WATERCOURSES.—*Unprecedented Flood.*—A flood is unprecedented if it is somewhat higher or more destructive than any preceding flood. p. 411.

17. WATERS AND WATERCOURSES.—*Obstruction of Stream.—Care Required.*—Due care on the part of one obstructing a stream requires that he take notice of the character of the country and that, in view thereof, he provide ample accommodation for the free passage of water at all seasons of the year. p. 412.

18. WATERS AND WATERCOURSES.—*Obstructing Stream.—Care Required.*—One obstructing a stream is required to take notice of the effect of improvements such as the clearing of lands of forests and constructing artificial drainage. p. 412.

19. RAILROADS.—*Obstructing Stream.—Liability.—Unexpected Flood. —Instruction.*—In an action against a railroad for negligently and unlawfully obstructing the flood waters of a stream, an instruction that plaintiff could not recover if the flood was "unexpected" was erroneous, where the word "unexpected" was used without being in any manner qualified. p. 412.

20. APPEAL.—*Briefs.—Sufficiency.—Failure to Include All Instructions.—Duty of Appellee.*—Appellant is required to set out in his brief only the instructions with respect to the giving or refusal of which he complains, and if the alleged errors therein are obviated by other instructions given, it is the duty of appellee to bring that fact to the court's attention. p. 413.

21. RAILROADS.—*Obstruction of Stream.—Liability.—Instruction.*— In an action against a railroad for negligent and illegal obstruction of the flood waters of a stream, an instruction that, if plaintiff's damages were caused in some other way than by obstructions which defendant placed in the natural channel of the river, or that by the manner in which it erected its trestles on its right of way, plaintiff could not recover, *held* erroneous as being somewhat obscure when considered in the light of the complaint and evidence and too narrow when measured by the allegations and proof. p. 413.

22. RAILROADS.—*Obstruction of Stream.—Liability.—Instruction.*—In an action against a railroad for negligently and illegally obstructing the flood waters of a stream, an instruction "that defendant is not liable for the act of God, and by act of God is meant not only natural accidents such as lightning, earthquakes and tempests," but also all other unavoidable and inevitable accidents, was both erroneous and harmful, where under the facts of the case defendant might be liable for the damages caused by the waters of a flood, the language used in the instruction being such as to lead the jury to understand that floods were included in the term "act of God." p. 414.

23. WATERS AND WATERCOURSES.—*Obstruction of Stream.—Liability.—"Act of God."*—In its relation to resulting damages a flood is classed as an act of God in a legal sense, with the consequent immunity of man from liability, only in the absence of human agency wrongfully or negligently contributing to produce the injury of which complaint is made. p. 415.

24. WATERS AND WATERCOURSES.—*Obstruction of Stream.—Liability.*—Where injury resulting from a flood is to some extent the result of the wrongful or negligent participation of man, the consequences are regarded as exclusively of human origin so far as concerns the question of liability, and the situation is removed from the scope of the rules that govern in case of the acts of God. p. 415.

25. NEGLIGENCE.—*Injury Involving Act of God.—Intervention of Human Agency.—Proximate Cause.*—Where an act of God is involved in damage to person or property, but a human agency negligently applied intervenes to produce the injury, the act of God is regarded as the remote rather than the immediate cause of the injury, and recourse cannot be had to it as a legal excuse. p. 415.

From Monroe Circuit Court; *Robert W. Miers,* Judge.

Action by George W. Zollman against the Baltimore and Ohio Southwestern Railroad Company. From a judgment for defendant, the plaintiff appeals. *Reversed.*

*Joseph E. Henley, Rufus H. East* and *Simpson B. Lowe,* for appellant.

*Robert W. Miers, Edward Barton* and *McMullen & McMullen,* for appellee.

CALDWELL, J.—Appellant is the owner of a 284-acre farm situate immediately east of the town of Medora, in Jackson county, through which, on an embankment, appellee's railroad extends in a general direction of southwest and northeast, and so that the major portion of the farm is south of the railroad. South of the railroad and roughly paralleling it flows White river in a southwesterly direction. At the time of the flood of 1913 appellee's embankment broke, and as a consequence large quantities of water impounded on the north side thereof were suddenly discharged upon appellant's lands south of the railroad. As a result his lands were damaged, and certain personal property injured and destroyed. Averring that appellee had negligently and unlawfully obstructed the flood waters of White river to his injury as alleged, he brought this action to recover the consequent damages. A trial resulted in a verdict in favor of appellee, on which judgment was rendered.

Before considering the cause on its merits, there are certain preliminary questions that must be determined. Thus, no exception was reserved to the judgment. The verdict was in general terms in favor of appellee. On the verdict judgment was rendered that appellant take nothing, and that appellee recover costs. Such judgment follows such a verdict as matter of course. Strictly speaking it involves no ruling, and consequently requires no exception in order that the losing party may be protected in his rights. Where the judgment is proper in form and in substance, as measured by the verdict or finding, the question of its correctness, as measured by the cause and the procedure, is tested by exceptions reserved to rulings pre-

ceding the rendering of judgment and properly presented. Elliott, App. Proc. §796; *Eckhart* v. *Marion, etc., Traction Co.* (1915), 59 Ind. App. 217, 109 N. E. 224; *State* v. *Swarts* (1857), 9 Ind. 221; *Duzan, Admx.,* v. *Myers* (1903), 30 Ind. App. 227, 65 N. E. 1046, 96 Am. St. 341; *Smith* v. *Tate* (1903), 30 Ind. App. 367, 66 N. E. 88.

The validity of §661 Burns 1914, Acts 1911 p. 193, is challenged. That question has in effect been determined. Appellee concedes as much in its brief. *Cleveland, etc., R. Co.* v. *Smith* (1912), 177 Ind. 524, 97 N. E. 164; *Tarnowski* v. *Lake Shore, etc., R. Co.* (1914), 181 Ind. 202, 104 N. E. 16.

Under that section appellant obtained an extension of time within which to file his bill of exceptions containing the evidence, beyond the time limited by the court for that purpose when the appeal was prayed and granted. It is urged that such extension was unauthorized by reason of defective notice to appellee, and that as a consequence the bill was not filed within the time properly fixed for that purpose, and that as a result it is not a part of the record. The facts are as follows: The motion for a new trial was overruled and judgment rendered November 9, 1914, at the October term of the trial court, and ninety days given within which to file the bill of exceptions containing the evidence. February 2, 1915, at a succeeding term of the court, appellant, proceeding under §661, *supra,* applied for and was granted an extension of such time to April 1, 1915. That section contains a provision to the effect that the party asking such an extension of time shall give the opposite party, or his attorney of record, at least three days' notice of the time when, and the place where, the application will be heard.

Filed with the verified application there was a copy of notice sufficient in form and substance and directed to appellee's attorneys of record, and attached to which there was an affidavit to the effect that six days prior to February 2, 1915, the day fixed for presenting the application, one of appellant's attorneys inclosed the original of such notice in an envelope properly stamped and addressed to appellee's said attorneys at Aurora, Indiana, and deposited it so stamped and addressed in the United States, mail. Appellee presents the question of the sufficiency of a notice under such statute where there is no service of it otherwise than as indicated. For reasons hereinafter appearing we do not find it necessary to determine such question, but by reason of its importance we suggest the insufficiency of a notice so served, where the service is not accepted as such. See the following: §§504, 505 Burns 1914, §§481, 482 R. S. 1881; *Chicago, etc., R. Co.* v. *Sanders* (1917), 63 Ind. App. 586, 114 N. E. 986; *Haj* v. *American Bottle Co.* (1914), 261 Ill. 362, 103 N. E. 1000; *Scanlon* v. *Scanlon* (1912), 154 Iowa 748, 135 N. W. 634; *North Coast Fire Ins. Co.* v. *Lincoln County* (1914), 81 Wash. 311, 142 Pac. 661; *Matter of Blumberg* (1912), 149 App. Div. 303, 133 N. Y. Supp. 774; *Ensley* v. *State* (1910), 4 Okla. Cr. 49, 109 Pac. 250; *Rathbun* v. *Acker* (1854), 18 Barb. (N. Y.) 393; *Wilson* v. *Trenton* (1891), 53 N. J. Law 645, 23 Atl. 278, 16 L. R. A. 200; 29 Cyc 1117, 1119.

As we have said, we are not required to determine the sufficiency of the notice or its service here. The bill itself discloses that it was presented to the judge on February 5, 1915, within the time originally granted. This is sufficient, although

3-4.

the bill was not filed until March 17. §660 Burns 1914, §629 R. S. 1881; *Malott* v. *Central Trust Co.* (1907), 168 Ind. 428, 79 N. E. 369, 11 Ann. Cas. 879.

There is a vacation entry to the effect that the bill was presented to the judge on March 5, instead of February 5, but the bill controls in this respect.

5. *Malott* v. *Central Trust Co., supra.* It may be said also that there are some indications outside the bill that the date of presentation stated in the bill is, erroneous. If so, no steps have been taken to correct the bill, and it must therefore govern as to the date of presentation. It results that, as recourse was not had to the extended time, irregularities or insufficiencies attending the procedure to procure the extension are immaterial.

We proceed to consider the various arguments advanced by appellee in support of its contention that the instructions are not in the record. The instructions were brought into the record by a bill of exceptions. An inspection of the bill discloses that it is proper in form and substance, and that it contains all the instructions that were given and all that were tendered and refused, and that appellant reserved an exception to each instruction given by the court on its own motion and at appellee's request, and a like exception to the refusal of each instruction tendered by appellant and not given. It appears from an order-book entry that the bill was filed on the day that the trial closed and consequently within the term at which the trial was had. The filing of the bill was a sufficient filing of the instructions. *Ohio, etc., R. Co.* v. *Dunn* (1894), 138 Ind. 18, 36 N. E. 702, 37 N. E. 546.

It appears also that the bill was signed on the day

that it was filed, it not appearing expressly whether the signing preceded the filing. It is true that

7. it is essential to the validity of a bill of exceptions that it be filed after rather than before it has been signed. But where, as is the case here, it appears that there was no default respecting the time of filing the bill and that it was filed on the day it was signed, the latter act is presumed to have preceded the former. Giving force to such presumption, it is sufficiently disclosed that the bill was signed before it was filed. *Martin* v. *State* (1897), 148 Ind. 519, 47 N. E. 930; *Toledo, etc., R. Co.* v. *Parks* (1904), 163 Ind. 592, 72 N. E. 636; *Davis* v. *Neighbors* (1905), 34 Ind. App. 441, 73 N. E. 151.

The various other statutory methods of making instructions a part of the record in a civil action are not exclusive of the method by bill of excep-

8. tions. *Berry* v. *Driver* (1906), 167 Ind. 127, 76 N. E. 967; *Republic Iron, etc., Co.* v. *Lulu* (1911), 48 Ind. App. 271, 92 N. E. 993.

The instructions being properly in the record by bill of exceptions, it is not necessary that we determine whether that end was accomplished by

9. other methods also attempted, or whether the statute was complied with in that respect.

Appellee insists that questions raised under the motion for a new trial should not be considered for the reason that the motion is not set out in full

10. in appellant's brief. The substance of those grounds on which appellant relies is set out. This is sufficient. There is no substantial reason why an appellant should encumber his brief with causes for a new trial waived or not relied on in this court.

Certain other criticisms are made respecting the

form and substance of appellant's briefs.    The briefs
are sufficient to present a number of questions
on the merits of the case.    Those questions are
therefore entitled to consideration.    *North* v.
*Jones* (1913), 53 Ind. App. 203, 100 N. E. 84.    It may
be said, however, that appellee's briefs, except cer-
tain general and unapplied propositions, are devoted
exclusively to objections to the sufficiency of the tran-
script and to criticism of appellant's briefs.    Appel-
lee's briefs under points and authorities do not con-
tain a single specific proposition directed to any
alleged error urged upon our attention by appellant.

An understanding of the general nature of the com-
plaint is essential to a proper consideration of ques-
tions presented involving the merits of the cause.
The complaint is in two paragraphs.    The first para-
graph is briefly to the following effect:    The general
direction of White river through Jackson county is
southwest.    It flows near the center of a low flat plain
about three miles wide flanked by hills on either side.
This plain is the flood or high water channel of the
river.    Appellant's 284-acre farm lies in this plain,
its' south line being about a quarter of a mile north of
the river.    The river overflows its ordinary channel
one or more times each year, and in each generation
there occur from five to ten floods that cover the entire
plain.    Appellee's railroad extends through the county
near the river, and in the same general direction.
The railroad passes through appellant's farm, and
so that about thirty-five acres of the latter in its
northwest corner are north of the former.    About
three miles east of the farm, at a point where the
course of the river is south, the railroad crosses its
ordinary channel at right angles, on a bridge.    East

of this point the railroad is south of the river; to the west it is north of the river. The railroad crosses the plain diagonally, emerging from the southern hills a number of miles east of the farm and east of where it crosses the river, and passing into the north line of bordering hills several miles west of the farm. The railroad crosses the flood plain on an artificial embankment ranging from three to fifteen feet high with trestle work at intervals. Except for such trestle work, the bridge and an occasional culvert, the embankment extends southwesterly in an unbroken line from bordering hills to bordering hills. From time to time and after floods and between successive floods appellee has built the embankment higher and reduced the trestle work in number and in length. Likewise the bridge by which the railroad crosses the river has been rebuilt several times, additional piers having been erected for that purpose in the low-water channel. In rebuilding the bridge, old piers no longer in use, and surrounded by grouting covering several hundred square feet of the ordinary bed of the river, were left standing. Formerly there was open trestle work in the embankment east of the river, but prior to the grievances complained of such trestle work had been removed and the embankment built solid from the east end of the bridge to the hills.

The following acts of omission are charged and characterized as negligence: That the supporting timbers and piling of the trestle work were bound together in clusters, and placed so as to obstruct unnecessarily the passage of the water, and so as to cause a collection of drift and debris which further prevented the passage of water; that an unnecessary number of piers were built under the bridge, and said

old piers were permitted to remain, whereby the free flowage of water was prevented, large quantities of drift permitted to accumulate, and a large sand bar caused to form, by reason of which the low-water channel was greatly obstructed; that the embankment was constructed and maintained with insufficient trestle work and openings; that the embankment was raised from time to time as above stated, and adequate openings for the passage of water were not constructed or left, and thereby the capacity of the embankment to pond water on the upper side was increased, and that the embankment was constructed and maintained of light material easily washed away. All these acts and omissions are characterized as having been negligently done and omitted.

There are allegations also grounded on clause 5, §5195 Burns 1914, §3903 R. S. 1881, which empowers a railroad company to construct its road across any stream or watercourse in such manner as to afford security for life and property, but which requires that any such company shall restore the stream or watercourse so crossed to its former state, or in sufficient manner as not to unnecessarily impair its usefulness or injure its franchises.

It is further alleged that in March, 1913, by reason of heavy and continued rains, White river was flooded, and that its waters overflowed its ordinary channel and spread out over the plain that constituted the bed of its high-water channel; that by reason of said embankment with its insufficient and obstructed openings, the water could not, and did not, flow away, but became impounded on the upper side of the embankment at an elevation of several feet above the level of the waters on the lower side; that by reason

of the pressure of the impounded waters, and the material of which the embankment was constructed, the latter broke in several places, some of which were on the railroad right of way on appellant's farm, and that as a result torrents of water swept down onto and over appellant's farm, wearing away the soil, washing great holes in it, and depositing great quantities of drift and debris, to the permanent damage of the land, and that as a further consequence certain of appellant's stock were drowned and others injured. There is a general averment of damages in the sum of $15,000, for which judgment is asked.

The allegations of the second paragraph are, in the main, similar to those of the first paragraph. The theory of the first paragraph is that the flood waters of White river were a part of the stream, and that such waters, aided by appellee's negligence, caused the damage complained of. The second paragraph proceeds on the theory that the waters that spread over the plain were surface waters which appellee negligently impounded on its right of way, and which it permitted to be suddenly discharged therefrom, to appellant's damage.

There was evidence supporting the averments of fact contained in the complaint in their general scope. Indicating nothing respecting the weight of such evidence, we proceed to the substantial questions presented involving the merits of the cause.

Appellant challenges certain instructions given by the court, among them the nineteenth, twentieth and twenty-ninth. The twentieth instruction was as follows: "If you find that the injury and damage complained of in plaintiff's complaint was caused by a flood which was unusual, extraordi-

nary and unexpected, the plaintiff cannot recover.''
The physical condition to which such instruction must
be applied in order that its correctness may be meas-
ured, as determined from a consideration of the alle-
gations of the complaint and the evidence adduced in
support thereof, is as follows:   White river is a
stream of water.  It has a low-water channel which is
·a natural watercourse.  It has also a flood channel
which is a natural high-water course.  The river fre-
quently overflows its low-water channel and floods
the high-water channel.  At such times the waters in
the low-water channel and the waters heaped above
them and the waters that overspread the high-water
channel, when unobstructed by the act of man, flow
down stream in one uniform and continuous current.
Regardless of what may seem to be the view as indi-
cated by some of the earlier decisions, it is now appar-
ently the settled law of this state that all such waters
are the waters of a natural watercourse, and that
liability for obstructing the flow thereof must be
determined from a consideration of those principles
of law that govern in case of the obstruction of a
stream rather than in case of mere surface water.
See the following, which cite many other cases: *Watts*
v. *Evansville, etc., R. Co.* (1918), (Ind. App.) 120
N. E. 611; *Cleveland, etc., R. Co.* v. *Woodbury Glass
Co.* (1918), (Ind. App.) 120 N. E. 426; *Evansville,
etc., R. Co.* v. *Scott* (1916), 67 Ind. App. 121, 114 N. E.
649; *Vandalia.R. Co.* v. *Yeager* (1915), 60 Ind. App.
118, 110 N. E. 230; *New York, etc., R. Co.* v. *Hamlet
Hay Co.* (1898), 149 Ind. 344, 47 N. E. 1060, 49 N. E.
269; *Northern Ind. Land Co.* v. *Brown* (1914), 182
Ind. 438, 106 N. E. 706; *Bristol Hydraulic Co.* v. *Boyer*
(1879), 67 Ind. 236; *Dunn* v. *Chicago, etc., R. Co.*

(1917), 63 Ind. App. 553, 114 N. E. 888. See, also, *Fordham* v. *Northern Pacific R. Co.* (1904), 30 Mont. 421, 76 Pac. 1040, 66 L. R. A. 556, 104 Am. St. 729; *Cairo, etc., R. Co.* v. *Brevoort* (1894), 62 Fed. 129, 25 L. R. A. 527; *O'Connell* v. *East Tenn. R. Co.* (1891), 87 Ga. 246, 13 S. E. 489, 13 L. R. A. 394, 27 Am. St. 246; *Crawford* v. *Rambo* (1886), 44 Ohio St. 279, 7 N. E. 429.

Returning to a consideration of instruction No. 20, it was to the effect that appellant could not recover if the flood that caused the damage was unusual, extraordinary and unexpected. "Unusual" is defined as meaning "not frequent, not common, rare, strange." "Extraordinary" is defined as meaning "not of the usual, or customary or regular kind; exceeding the common degree or measure." Century Dictionary. Each of these words is practically synonymous of the other. If a phenomenon is unusual it is out of the ordinary and therefore extraordinary. The applicability of the words "unusual and extraordinary" presupposes the happening of incidents that are usual and ordinary and of other incidents that are exceptional in nature, but that have occurred and that may reasonably be expected to occur again, but which, by reason of their exceptional nature and when measured by that which is common, are designated as "unusual and extraordinary." It is said that the word "extraordinary" does not mean what has never been previously heard of, or within former experience, but only what is beyond the ordinary, the usual, or the common. *The Titania* (1883), 19 Fed. 101. It is said also that the term "unusual" is scarcely strong enough to describe a freshet so outside of ordinary experience that its occurrence was not reasonably

to be expected. *Broadway Mfg. Co.* v. *Leavenworth, etc., Bridge Co.* (1910), 81 Kan. 616, 106 Pac. 1034, 28 L. R. A. (N. S.) 156. It is held also that an "unusual flood of rain" does not indicate a greater or more severe rain than has theretofore occurred, but rather such a rain as occurs rarely and not usually. *City of Denver* v. *Rhodes* (1886), 9 Colo. 554, 13 Pac. 729.

It is our judgment that, to be strictly accurate, the terms "unusual" and "extraordinary" when considered from an etymological standpoint, as well as when measured by popular usage, are both comprehensive and flexible in meaning. They include all occurrences, events and phenomena that are beyond the usual and the ordinary. An incident that has occasionally occurred, although exceptional in nature, may on its reoccurrence be properly characterized as unusual and extraordinary. Also an event the like of which has never previously occurred, and respecting which there is no reasonable ground for expecting it to occur again, may on its occurrence likewise properly be designated as unusual and extraordinary.

It is by reason of the comprehensiveness and flexibility in meaning of the terms under discussion that we are forced to condemn the instruction under consideration. The instruction by the use of such words unqualified and unexplained outlined a defense broader than the law recognizes. In such a case as is presented here the defendant may be liable although the flood that concurred with some act of, his was unusual and extraordinary in nature. In such a case the defendant may be held liable in damages not only where

the flood was usual and ordinary in nature, but also where it may be designated as unusual and extraordinary, provided its occurrence might have been anticipated by the exercise of reasonable skill and foresight. *Vandalia R. Co.* v. *Yeager, supra.*

We believe that the qualifying clause is a correct statement of the real test: If the flood under investigation was of such a nature that, in view of all the facts, the exercise of reasonable skill and foresight should have led to its being anticipated, there may be liability. If it was of such a nature that it could not reasonably have been expected to occur, proper care, diligence and foresight being exercised, there is no liability. Such being the test, the fact that the flood was or was not extraordinary or even unprecedented in nature is of itself and as an independent consideration unimportant. The nature of the flood as usual or unusual, ordinary or extraordinary, is important only as an element in determining whether or not it should have been anticipated.

As we have indicated, we do not believe that the mere fact that the flood was unprecedented can be said, as matter of law, to form the basis of an escape from liability. A flood is unprecedented if it is somewhat higher or somewhat more destructive than any preceding flood. If a flood of a certain water elevation or of a certain destructive force has occurred, it is not unreasonable to anticipate that a like combination of the forces of nature may produce a similar flood. Neither can it be said as a matter of law that some other combination of the forces of nature, aided by topographical and other changes incident to an advancing civilization and the like, may not produce a flood

somewhat greater than any flood that preceded it, and hence the soundness of the rule of reasonable anticipation. We make these observations by reason of the language of certain other instructions. In *Ohio, etc., R. Co.* v. *Ramey* (1891), 139 Ill. 9, 28 N. E. 1087, 32 Am. St. 176, the Supreme Court of Illinois collects and reviews the decisions to the effect that, in cases similar to the one at bar, the fact that the damages resulted from an extraordinary flood is of itself immaterial in the absence of the qualification that the flood was so great or extraordinary that it could not have been reasonably anticipated. To the same effect is *Gulf, etc., R. Co.* v. *Pomeroy* (1887), 67 Tex. 498, 3 S. W. 722. In such cases it is incumbent on him who obstructs a stream, in order that he · may be found to have exercised due care, that he take notice of the character of the country, and that he provide ample accommodation for the free passage of the water at all seasons of the year, in view of the character of the country. *New York, etc., R. Co.* v. *Hamlet Hay Co., supra.*

He is also required to take notice of the effect of improvements in the way of clearing the lands of forests and constructing artificial drainage. *Evansville, etc., R. Co.* v. *Scott, supra; Dunn* v. *Chicago, etc., R. Co., supra; Fordham* v. *Northern Pacific R. Co., supra.* See, also, *Crawford* v. *Rambo, supra; Greeley Co.* v. *Von Trotha* (1910), 48 Colo. 12, 108 Pac. 985; *Bristol Hydraulic Co.* v. *Boyer, supra; Northern Ind. Land Co.* v. *Brown, supra.*

It is apparent from what has been said that we cannot approve the use of the word "unexpected" unqualified as in the instruction. Appellee in its brief has called our attention to no instruction supplementing, or given in explanation of,

instruction No. 20.   At this point it is proper
20. to notice appellee's contention that under the
rules we are not authorized to consider any
question respecting instructions, for the reason that
appellant has not set out in his brief all the instruc-
tions in full.   The rule is otherwise.   An appellant
is required to set out in his brief only the instructions
with respect to the giving or refusal of which he com-
plains.   "If the error, with which appellant claims
the instructions set out in its brief are impressed, are
in any manner obviated or cured by the other instruc-
tions given in the case, the duty devolves upon appel-
lees, under rule twenty-two, to call the attention of the
court to such fact or facts, citing the court to the
pages and lines where the instructions upon which
they relied for that purpose might be found." *Sim-
plex, etc., Appliance Co.* v. *Western, etc., Belting Co.*
(1909), 173 Ind. 1, 88 N. E. 682; *Waters* v. *Indian-
apolis Traction, etc., Co.* (1916), 185 Ind. 526, 113
N. E. 289.

The nineteenth instruction was in substance that, if
the jury should find that appellant's damages were
caused in some other way than by obstructions
21. which appellee placed in the natural channel of
White river, or than by the manner in which
it erected its trestles on its right of way, appellant
could not recover, and that the verdict must be for
appellee.   It seems to us apparent that this instruc-
tion is somewhat obscure when considered in the light
of the complaint and the evidence, and also that it is
too narrow when measured by the allegations and
proof.   The expression "natural channel" might have
been, and probably was, understood by the jury to
have reference to the low-water channel, since that is

popularly referred to as the natural channel. Lia-
bility, however, as we have seen, might be predicated
on damages caused by obstructions placed in either
the low-water or the high-water channel, or both. It
is at least doubtful whether the instruction is suffi-
ciently broad to include the alleged fact that insuffi-
cient openings were left in the embankment, and we
believe it to be plain that it does not cover the alleged
wrongful and negligent act of constructing and main-
taining the embankment of light material easily
washed away by water. We believe that it was error
to give this instruction. *Cleveland, etc., R. Co.* v.
*Christie* (1912), 178 Ind. 691, 700, 100 N. E. 299;
*Kelly Atkinson Constr. Co.* v. *Munson* (1913), 53 Ind.
App. 619, 101 N. E. 510; *Ohio, etc., R. Co.* v. *Stein*
(1894), 140 Ind. 61, 39 N. E. 246.

The twenty-ninth instruction was as follows: "The
defendant is not liable for the act of God, and by
act of God is meant not only natural accidents such
as lightning, earthquakes and tempests, but also it
embraces all other unavoidable and inevitable acci-
dents."

We believe that this instruction as applied to the
facts of this case was both erroneous and of harmful
tendency. While floods are not specifically
mentioned, they belong to the same general
class as lightning, etc., which are specifically
mentioned. Floods, especially when extraordinary
in volume and force, are, in a legal sense, embraced
by the term "acts of God." It results that, by the
general language used, the court must have intended
to include floods and the jury must have so under-
stood. Otherwise the instruction was not applicable
to the case. The instruction then was to the effect

that appellee was not liable for the consequences of the flood. In such a case as this, however, a defendant may be liable for the damages caused by the waters of a flood. In its relation to resulting damages a flood is classed as an act of God in a legal sense with the consequent immunity of man from liability, only in the absence of human agency wrongfully or negligently contributing to produce the injury complained of. *Cleveland, etc., R. Co.* v. *Woodbury Glass Co., supra.*

Where the injury complained of is to some extent the result of the wrongful or negligent participation of man, the consequences are regarded as exclusively of human origin in so far as concerns the question of liability, and the situation is removed from the scope of the rules that govern in case of the acts of God. *Willson* v. *Boise City* (1911), 20 Idaho 133, 117 Pac. 115, 36 L. R. A. (N. S.) 1158.

In a case involving an act of God, but where a human agency negligently applied intervenes to produce the injury, the act of God is regarded as the remote rather than the immediate cause of the injury, and recourse cannot be had to it as a legal excuse. *Sprowl* v. *Kellar* (1833), 4 Stew. & P. (Ala.) 382; *New Brunswick Steamboat, etc., Co.* v. *Tiers* (1853), 24 N. J. Law 697, 64 Am. Dec. 394.

Where lands were damaged by the overflow of waters from a canal, and where the overflow would not have occurred but for the negligent act of the canal owner in permitting a sand bar to form in the canal, the injury cannot be attributed to an act of God. *Chidester* v. *Consolidated Ditch Co.* (1881), 59 Cal. 197.

In the case at bar, if negligence may not be attrib-

uted to appellee in failing to anticipate the occurrence of a flood of the nature of the one involved here, if appellee's work as constructed and maintained was reasonably sufficient and proper in view of what should have been anticipated in the exercise of due care, that is, if appellee was guilty of no negligent or wrongful conduct in the premises, then it would appear that the injury to appellant's property resulted from an act of God without the intervention of human agency. But if, in constructing and maintaining the work, negligence in act or omission must be ascribed to appellee, and such negligence intervened to produce the injury, then appellee may not escape liability by appealing to the rules that control in case of an act of God. See 1 C. J. 1174, and notes.

Other questions presented are not considered or decided. Judgment reversed, with instructions to sustain the motion for a new trial.

·Dausman, C. J., Batman, P. J., Ibach and Felt, JJ., concur.

Hottel, J., not participating.