## THE NORTHERN INDIANA LAND COMPANY *v.* BROWN ET AL.

[No. 22,441. Filed November 17, 1914.]

1. LEVEES.—*Construction.*—*Intervention.*—Under §273 Burns 1914, §272 R. S. 1881, providing that a person not a party to an action, but having an interest in the subject thereof, may be made a party, one whose lands will be affected by the construction of a levee, on proper showing may be permitted to intervene for the purpose of remonstrating and protecting his rights. p. 441.

2. APPEAL.—*Judgments Appealable.*—*Denial of Intervention.*—The refusal to allow a person petitioning to be made a party to a pending suit is a final judgment from which an appeal will lie. p. 441.

3. LEVEES.—*Construction.*—*Intervention.*—*Sufficiency of Petition.*— A petition for leave to intervene in a proceeding for the construction of a levee, alleging that petitioner's land was not de-

scribed in the petition as land that would be benefited or injured by the levee, and stating facts to show that said lands would be greatly affected by the construction of same by reason of its encroachment on the free flow of water in the river so as to cause the water to overflow and render his land valueless and unfit for cultivation, was sufficient to entitle petitioner to intervene; the question of whether its allegations were well founded in fact being a matter for determination on proper hearing. p. 442.

From Lake Superior Court; *Virgil S. Reiter*, Judge.

Petition by The Northern Indiana Land Company for leave to intervene in a proceeding on the petition of John Brown and others for the construction of a levee. From a judgment denying the right to intervene, the petitioner appeals. *Reversed.*

*Crumpacker & Crumpacker, A. Halleck* and *Hubbell, Mc Inerny, McInerny & Yeagley,* for appellant.

*J. Will Belshaw, Otto J. Bruce* and *W. Vincent Youkey,* for appellees.

SPENCER, J.—This action has its origin in a petition filed by appellees in the superior court of Lake County, asking for the construction of a certain levee in said county. §8188 Burns 1908, Acts 1907 p. 404. The petition alleges that certain lands, described therein, are situate in Lake County and that said lands are the only lands to be benefited or damaged by reason of the construction of said levee. It was regularly docketed as an action pending on October 21, 1912, and subsequently referred to the levee and drainage commissioners for a report thereon. On December 10, 1912, the commissioners filed their preliminary report, setting forth a description of the lands to be benefited or damaged by the construction of the proposed improvement and notice was regularly given to those landowners who were brought in by said preliminary report but not named in the petition. The final report of the commissioners was filed on February 24, 1913. In none of these proceedings were the lands of appellant described as being affected by the proposed levee

and it was not served with notice of the pendency of the cause. On April 25, 1913, before the levee was ordered established, appellant filed its petition for leave to intervene in said proceeding and for leave to file a remonstrance therein. This petition alleges that appellant is the owner of certain described lands, situate in Jasper and Newton counties, and proceeds as follows: "that said lands are adjacent to and border along the south bank of the Kankakee River for a distance of fifteen (15) miles and are on the opposite side of said river from the location where, by the petition and report of the commissioners filed in this cause, the improvement described in the report is proposed to be located and constructed, being distant from said proposed improvement at some points no more than 200 to 300 feet. That said Kankakee River where the same flows along the lands of this remonstrator herein described and where the same will flow along said improvement is a shallow, winding stream with low and marshy banks, and the ground upon which the said levee is proposed to be constructed is frequently under water, and during a portion of the year forms a part of the bed of said river, and the waters of said river escape and pass down the river at frequent intervals and various seasons of the year over said ground upon which said levee is proposed to be constructed, thereby enabling said water to escape and pass off and down said river without obstruction and more rapidly than it would otherwise, and if said levee is constructed as prayed for in said petition and the report filed in said proceeding, the same will constitute an obstruction to said river and the flow of the water therein, and will divert the water of said river from the north side out of the natural water channel over to and upon the lands of this petitioner herein described—to the irreparable injury and damage to this petitioner. That the construction of said proposed levee, where the same is to be constructed as shown by the petition and report in said proceeding now on file, will narrow the channel of said river and cause the

water in said river to pile up and flow over the opposite bank of said river from said levee to and upon the lands of this petitioner, to its irreparable injury and damage for which injury and damage this petitioner has no redress save as the same may be acquired and had in this proceeding as the court may adjudge and decree. And this petitioner further shows that the location and construction of the proposed levee, where the same is to be constructed, will entirely close, cut off, and obstruct the high water or flood channel of said river on the north side thereof, thereby causing the waters of said river to be thrown over, back and upon the lands herein described belonging to this petitioner; that said lands of this petitioner are now dry and tillable and have been and now are used for farming purposes and the construction of said proposed levee, where and as the same is to be constructed, will destroy said lands for farming purposes, and will cast the water from said river upon the same and said proposed levee will so obstruct the channel of said river as to retain the waters upon the lands of this petitioner for a long period of time, thereby rendering the same unfit for cultivation. Wherefore, your petitioner prays that it may be permitted to intervene in said cause and be made a party thereto, for the purpose of remonstrating and protecting whatever right or rights this petitioner may have, both in law and equity, in this behalf.''

This petition was overruled and the alleged error in such ruling is the only question presented by this appeal. It has been expressly decided that §273 Burns 1914,

1. §272 R. S. 1881, providing that when a person not a party to an action but having an interest in the subject thereof may be made a party, is applicable to a drainage proceeding. *Zumbro* v. *Parnin* (1895), 141 Ind. 430. It has also been held that a refusal to allow

2. a person petitioning to be made a party to a pending suit is a final judgment from which an appeal

will lie. *Voorhees* v. *Indianapolis Car, etc., Co.* (1895), 140 Ind. 220.

The question which we have to determine, then, is whether on the showing made by appellant's petition, the trial court was justified in refusing its application to be made a party to the proceeding. The appellant alleges in its petition that although its lands have not been assessed for benefits or damages, yet said lands will be greatly affected by the construction of the proposed levee, for the reason that said levee would encroach on the free flow of water in the Kankakee River and cause said river to overflow said lands and render them valueless and unfit for cultivation. Whether such allegations are well founded in fact is a matter with which we are not concerned in this appeal. It is for us to determine whether, assuming the allegations of the petition to be true, appellant was entitled to a hearing. This question may be answered by a reference to the language used in some of the decided cases. In *Reasoner* v. *Creek* (1885), 101 Ind. 482, 483, it is said, "If a property owner whose land would be injured by overflows which the construction of a ditch would cause cannot secure just compensation because the ditch commissioners decide that it is not necessary to assess him with benefits or damages, then, all that need be done to defeat his rights would be to leave such property out of consideration. Plainly this would be unjust. We can see no reason for holding that a property owner must be denied compensation for injuries merely because the ditch commissioners have not deemed it proper to investigate and report upon his rights, nor because the petitioners have not described his land in their petition. The ultimate and substantial question is, Will the complainant's land be directly injured? not was his land described in the petition or mentioned in the report of the commissioners? It is not in the power of the petitioners to cut him off from his right to compensation, for that right does not depend upon what the petitioners or the commissioners may do, or omit to do,

but upon the fact of a direct and material injury to his land. If it is ascertained that he will sustain a legal injury entitling him to compensation, the law awards it to h'm, and no act or omission of the petitioners or commissioners can keep it from him. If the facts and the law entitle him to compensation, what has been done or left undone by the petitioners and commissioners is of no importance. * * * We can conceive of no just reason why the landowner may not invoke the assistance of the courts for the vindication of his right, by becoming a party to the original cause and asserting his rights by a remonstrance. Such a procedure has the great merit of simplicity and directness; it has also the merit of preventing a multiplicity of actions, and of settling the controversy before the work of constructing the ditch has been actually entered upon.''

From the reasoning in the above case it is apparent that appellant was entitled to be heard on its petition if it further appears from the face of said petition that the construction of the proposed levee would be in violation of appellant's rights. In *Burwell* v. *Hobson* (1855), 12 Gratt. (Va.) 322, 65 Am. Dec. 247, the supreme court of Virginia uses this language: ''The maxim *sic utere tuo ut alienum non laedas* emphatically applies to the case of a riparian proprietor, and is the true legal as well as moral measure of his rights. He has no right to divert the stream, or any part of it, from its accustomed course, to the injury of other persons. This is a plain proposition, laid down by all the writers on the subject of water rights, and was not denied by the counsel for the appellee. But he contended that it is confined in its application to the ordinary course of the stream, and that a riparian proprietor may lawfully protect his property from floods, by erecting a dike or other obstruction on his own land, though its necessary effect may be to turn the superabundant water on the land of his neighbor. Such a distinction between the ordinary and extraordinary flow of a stream, is not laid down or recognized by any

elementary writer, nor in any adjudged case, so far as I have seen. The utmost extent to which the authorities seem to go in that direction is, that a riparian proprietor may erect any work in order to prevent his land being overflowed by any change of the natural state of the stream, and to prevent its old course from being altered. Angell on Watercourses, sec. 333. But he has no right, for his greater convenience and benefit, to build anything which, in times of ordinary flood, will throw the water on the grounds of another proprietor, so as to overflow and injure them: *Id.*, sec. 334. If, in the case of such an obstruction, it appears that the injury therefrom arose from causes which might have been foreseen, such as ordinary periodical freshets, he is liable for the damage: *Id.*, sec. 349.''

In the case of *New York, etc., R. Co.* v. *Hamlet Hay Co.* (1898), 149 Ind. 344, 347, this court said: ''It is next objected that the waters which backed up over appellee's lands were flood waters occurring during a rainy season, and as such were surface waters against which appellant had a right to build its embankments, even to the damage of appellee. There is no doubt that flood water which leaves the channels of a stream and spreads out over the adjacent lands, running in different directions or settling in pools and flats, ceases to be a part of the stream and becomes in effect surface water. Such however, was not the character of the waters here alleged to have been thrown back on appellee's land. The complaint says: 'From time immemorial, during the springtime and rainy seasons of the year, the waters in said river are swollen by rains and freshets, so that the river rises above its ordinary channels and flows in highwater channels, having well-defined beds and banks, and requires for the free passage of the water a much wider waterway than in other seasons of the year.' It was this water, flowing down the stream within the highwater channels, a part of the river, in fact, that was obstructed by the embankments and thrown back

upon appellee's land. * * * It cannot be questioned that the waters in controversy would all have flowed down through the Yellow river and into the Kankakee, as they had done from time immemorial, had it not been for the embankments complained of. That the banks of the stream are not everywhere clearly and sharply defined is not controlling. The character of the country through which the stream flows must be taken into account. Where the country is hilly or rolling, the fall rapid and the soil easily cut and washed there will in general be a deep and well marked channel. Where, however, the country is flat the fall slight and the soil turfy and full of roots and strong grass, there the channel will often be shallow and the sides in many places not sharply defined. * * * The Kankakee valley is a nearly level country, the soil generally peaty on the surface, and covered with a strong growth of native grass. The streams are consequently shallow and sluggish until swollen in the rainy season, when they rise above the usual dry-weather banks and flow in broad, strong bodies down the valley. Such streams are, however, watercourses quite the same as if they flowed within rocky and unchangeable banks. It was incumbent on appellant, in the construction of its road, as we have already seen, to take notice of this character of the country, and provide ample accommodations for the free passage of the waters over its right of way at all seasons of the year.''

In *Cairo, etc., R. Co.* v. *Brevoort* (1894), 62 Fed. 129, 25 L. R. A. 527, it was held that a riparian proprietor has no right to erect a levee or artificial bank along the margin of a stream which will cause superabundant water in times of flood to flow upon the lands of other riparian owners. The same rule finds expression in the well-considered case of *O'Connell* v. *East Tennessee, etc., R. Co.* (1890), 87 Ga. 246, 13 S. E. 489, 13 L. R. A. 394, 27 Am. St. 246, where the railroad company was held liable for so constructing an embank-

ment as to cause excessive overflows to the injury of plaintiff's land.

Whether the facts in the case at bar are sufficient to bring it within the doctrine of the cases just above cited is a matter to be determined on proper hearing. The allegations of the petition are sufficient to entitle appellant to such a hearing and the same should have been granted. Judgment reversed, with instructions to allow appellant to intervene and be made a party to this cause, with leave to file a remonstrance, if desired, and for further proceedings not inconsistent with this opinion.

NOTE.—Reported in 106 N. E. 706. As to what judgments and orders may be appealed from, see 20 Am. St. 173. See, also, under (2) 2 Cyc. 586; (3) 25 Cyc. 190.