## De LOZIER v. COLLIER.

No. 13379—Opinion Filed Oct. 28, 1924.

### Drains—Drainage District not Liable to Suit for Damages.

Under chapter 38, Comp. Stat. 1921, entitled "Drains and Ditches," there is no authority for a drainage district to sue or be sued, and a suit for damages will not lie against such drainage district.

(Syllabus by Maxey, C.)

Commissioners' Opinion, Division No. 1.

Error from District Court, Lincoln County; Hal Johnson, Judge.

Action by Emma DeLozier against D. W. Collier, Drainage Commissioner of Deep Fork Drainage District No. 1, Lincoln County, Okla. Judgment for defendant, and plaintiff appeals. Affirmed.

Emery A. Foster and Jas. A. Embry, for plaintiff in error .

Embry, Johnson & Tolbert, for defendant in error.

Opinion by MAXEY, C. The parties appear in this court as they did in the court below and will be referred to as plaintiff and defendant.

This is an action by the plaintiff, Emma

DeLozier, to recover damages which she alleged was caused to her crops from the overflow of a ditch or drainage constructed through her lands by said drainage district. In her petition she alleges that she is the owner and possessed of the fee simple title in and to the south one-half of the southwest quarter of section 10, township 14, range 6, and the north one-half of the northwest quarter of section 15, township 14, range 6, Lincoln county, Okla.; that· heretofore the county commissioners of Lincoln county, Okla., as drainage commissioners, under and by virtue of section 6039, Rev. Laws 1910, known as the Oklahoma State Drainage Act, the same being chapter 38 of Comp. Stat. 1921, entitled "Drains and Ditches."

She alleges a failure on the part of the commissioners to comply with certain sections of the statute relating to the formation of drainage districts. and alleges defective construction· of the ditch which caused the water to overflow and damage her crops for the years 1918, 1919, and 1920, amounting to several thousand dollars for the three years. A demurrer was sustained to her petition. She excepted and elected to stand on her petition, and in due time· this appeal was lodged in this court.

The only error assigned is to the sustaining of defendant's demurrer to plaintiffs' petition on each cause of action, and the dismissal of same. There have been a number of cases before this court in which various sections of the drainage act have been construed, but in no case, so far as we have been able to find or that has been called to our attention, has the court passed upon the question of whether an action for damages will lie. Some of the cases that have been brought to this court for damages are very similar to the petition in this case, and have reached this court on a demurrer to the petition, and the judgment of the court sustaining the demurrer has been affirmed. There have been other cases based on other sections of the statute, but, as before said, none of them decide the question as to whether damages can be recovered from a drainage district on account of overflow of the land and damage to the crops of persons living along said ditch.

An examination of the provisions of all the statutes will show that the object and purpose of the statute is to reclaim swamps and land subject to overflow, and make i' suitable for cultivation and production of crops therefrom. In the first place, it is presupposed that the land is unfit for cultivation, and for that reason the Legislature in its wisdom saw fit to enact laws that would enable the owners of lands to form a quasi corporation or organization by which they could ditch the land along and through said swamps or overflow district. and by ditches and drains reclaim the land and reduce it to a state of cultivation for agricultural purposes. The statutes provide how a drainage district can be created or organized. It provides for a petition of the property owners, and the appointment of viewers to act under the county engineer and make estimate of the cost of drainage and report to the board of county commissioners. The board of county commissioners must give notice by publication of the proposed formation of the drainage district, and that there will be a hearing on a day certain, and warning all people interested to appear and file their objection, if any, to the formation of such districts, and, in failing so to do, they shall be forever barred and estopped from setting up any claim on account of the organization of said drainage district. The statute then provides for an assessment against the property to be made, and a notice is required to be published of the amount assessed against each piece of property, and the owners are again warned to appear at the hearing. and file their objections, if any, and upon such objection being filed, the board of county commissioners shall investigate such objection and may reduce the assessment on some and increase it on others. The purpose of this being that each particular piece of land shall be taxed and required to pay its proportional part of the expense of constructing the drainage ditch based on the benefit said land will derive from the construction of such ditch. Either party may appeal from the decision of the board of county commissioners to the district court, and have the case tried in the district court as other cases. If no appeal is taken the judgment of the board of county commissioners becomes final, and the parties must pay the amount of taxes levied against their respective properties. All these provisions of the statutes must be substantially complied with in order to legally form a drainage district. It appears from the petition in this case, that the plaintiff got notice in some way that a drainage district was being organized. She found out that there was a tax levied against her land and she alleges that she paid taxes under protest The petition alleges in a general way irregularities in the formation of said drainage district. The case of Mulligan v. Johnson, 77 Okla. 68, 186 Pac. 242, was a case from Grady county whereby the plaintiff, Johnson, sought to restrain the county treasurer from

collecting the assessments levied against his land. This case raised the question of irregularities of assessments against the property of plaintiff, and the court held that under the showing made in that case the commissioners had no jurisdiction to create the district, and therefore no valid assessment could be levied against the property of the plaintiff for the construction work. The case of Montgomery v. Krouch, 77 Okla. 51, 186. Pac. 218, is a case where the plaintiff claimed damages for a failure to keep the drainage ditch in repair, and for damages for causing his land to be overflowed. The trial court sustained a demurrer to the evidence of plaintiff on the first cause of action, and laid down the procedure to be followed by a person who claims damages for a failure to keep the drainage ditch in proper repair, and points out the sections of the statute under which he shall proceed. Counsel for plaintiff in error says that our court seems to follow a line of decisions based upon Elmore v. Drainage Commissioners 135 Ill. 269, 25 N. E. 1010, 25 Am. St. Rep. 363. Counsel thinks that the Illinois court has receded from the decision in the Elmore Drainage Case and lays down a different rule in Bradbury v. Vandalia Levee & Drain. Dist.. 236 Ill. 36, 86 N. E. 163. An examination of the drainage act of Illinois will disclose an amendment to the drainage laws between these two decisions which probably accounts for the conflict, if there is a conflict in the two cases. Counsel for defendant in error has cited a great many cases from other states, and especially the state of Arkansas, which seems to have had a great many cases over their drainage districts. The road improvement legislation in the various states has produced a lot of litigation. But an examination of the statutes of the various states creating drainage districts and road improvement districts and like legislation will show that the decisions of other states are not very helpful to us because we find that the statutes are somewhat different in all of the states. As before stated our court has never passed on the question of whether damages can be recovered against the drainage district. We can find nothing in the drainage act that authorizes a suit for damages against the drainage district. In other words we seem to adhere to the common-law, and, as decided in Montgomery v. Krouch, supra, the general rule is that drainage districts can neither sue nor be sued unless provided by statute, and our statute does not provide for their suing or being sued.

Since the institution of this suit, the Legislature, no doubt having in mind the de-

fects of our drainage act. by Act of March 28, 1924, being chapter 139 of Session Laws of 1923-24, has almost completely rewritten our drainage law, and in this new act they have provided for just such cases as this and laid down the procedure by which a person who is damaged by the construction or maintenance of drainage ditches may recover damages, and it also provides a means of paying such judgments so that the defects that plaintiff met with in this case have been provided for, but too late to help him in the present case. The judgment of the trial court sustaining the demurrer to the petition in this case should be affirmed.

By the Court: It is so ordered.