## CARSON v. OKLAHOMA DREDGING CO. et al.

No. 19654. Opinion Filed June 30, 1931.

Rehearing Denied Oct. 27, 1931.

S. H. Singleton and Jones & Clift, for plaintiff in error.

Sullivan & Rice, for defendants in error.

Hayes, Richardson, Shartel, Gilliland & Jordan, amici curiae.

McNEILL, J. This action was brought by plaintiff in the district court of Stephens county, Okla., to recover damages to his crops and land by reason of a drainage district in said county. The parties will be referred to as they appeared in the trial court, Hugh Carson, plaintiff in error, as plaintiff, and Oklahoma Dredging Company, E. W. Hogan, president of said company, C. H. Hogan, secretary of said company, H. W. Hill, P. A. Armstrong, and O. R. McKinney, defendants in error, as defendants.

The petition of the plaintiff consists of two causes of action. In his first cause of action plaintiff alleges, in substance, that he is the owner of and in possession of the premises in question; that, heretofore, the defendants H. W. Hill, P. A. Armstrong, and O. R. McKinney, together with a large number of other citizens, residents of said county, organized what is known as "Little Beaver Drainage District"; that the land of plaintiff is situated adjacent to, immediately below, and south of said drainage district on Little Beaver creek; that said drainage district was formed under and by virtue of chapter 38, Comp. Stats. 1921, known as the "Oklahoma State Drainage Act"; that said drainage act provides for no compensation for damages to land and property situated without the drainage district resulting from the construction and maintenance of a drainage district, and is therefore unconstitutional and void, in that it provides for the taking of private property for public use without just compensation in violation of sections 23 and 24, art. 2, of the Constitution of Oklahoma; that said defendants H. W. Hill, P. A. Armstrong, and O. R. McKinney, together with a large number of other persons, the owners of the lands situated and included within said drainage district, entered into a contract with the defendant Oklahoma Dredging Company, for the construction of a drainage ditch; that the same was constructed in said district extending to a distance of about eight miles; that by reason of the negligent cutting, constructing, and maintaining of said drainage ditch, the water of Little Beaver creek was diverted from its natural course into said drainage ditch; that said drainage ditch was inadequate and was not constructed in such a manner as to enable the water of Little Beaver creek, diverted into the same, to pass on and escape as it did when permitted to flow down the natural water course; that, by reason of the changing of the distance it had to flow, a larger volume of water reached the point of intersection with Little Beaver creek on the edge of plaintiff's farm several hours sooner; that said waters flowed more swiftly and with greater force and momentum in the neighborhood of the plaintiff's farm, by reason of the construction of the drainage ditch and by reason of being diverted from its natural water course,

and, as a result thereof, was caused to overflow and greatly damage the farm of the plaintiff in the sum of $10,000; that such damages occurred in October, 1926, and April, 1927, subsequent to the construction and completion of said drainage district.

Plaintiff, in his second cause of action, adopts all the allegations contained in his first cause of action relative to the construction and maintenance of said ditch, and, in addition thereto, alleges that the defendant Oklahoma Dredging Company, acting for and at the instance of its codefendants, negligently left, or stored on the edge or side of said drainage ditch, a bunker barge or flat boat; that when said ditch became filled with water, said barge was floated from its moorings where it was left and lodged against a bridge which spans Little Beaver creek on the section line at the south side of said drainage district, at the point where said drainage ditch intersects or flows back into Little Beaver creek, thereby damming up the creek and obstructing the flow of water in the creek from said drainage ditch, and causing said ditch to overflow for some distance north from the point of entrance, or intersection with Little Beaver creek, which resulted in filling up the channel of Little Beaver creek, and forcing the water out over the land of the plaintiff which had theretofore been fertile and productive farm lands, making the same worthless and unfit for agricultural purposes, to his damage in the sum of $10,000.

A demurrer was sustained to each cause of action. The plaintiff excepted, and elected to stand on his petition, whereupon judgment was rendered by the court in favor of the defendants and against the plaintiff, and in due time this appeal was lodged in this court.

The only error assigned is the action of the trial court in sustaining the defendants' demurrer to plaintiff's petition on each cause of action and the dismissal of the same.

In the second cause of action, the plaintiff's right to recover damages to his land is based upon the negligent acts of the defendant Oklahoma Dredging Company, in carelessly leaving or storing on the edge or side of said drainage ditch a bunker barge or flat boat, resulting in the overflow and damage to plaintiff's land. In their briefs, the defendants have neither furnished authorities nor argument to show that the allegations of negligence in this cause of action are not sufficient to state a cause of action, and, if proven, we are of the opinion that the plaintiff would be entitled to recover from the defendant Oklahoma Dredging Company, such damages as may be shown to be the proximate result of such acts of negligence. We therefore hold that the court erred in sustaining the demurrer of the Oklahoma Dredging Company to the second cause of action.

It is the contention of the plaintiff that the statute, under which this drainage district was organized, created, and constructed, is unconstitutional and void; that it contains no authority for a drainage district to sue or be sued, and that a suit for damages will not lie against such district; that plaintiff's property, situated without the drainage district, was damaged by the construction and maintenance of said drainage district, and that plaintiff has suffered damages to his property without just comsation, all of which violates sections 23 and 24 of art. 2 of the Constitution of Oklahoma; that said statute being unconstitutional and void, the creation, organization, and construction of the said drainage district was done without authority of law, and that all persons, aiding or assisting in its organization, are jointly and severally liable for any damage that may have resulted therefrom, and consequently, the defendants in this case are liable to the plaintiff for the damages suffered by him.

The defendants contend that, under the provisions of chapter 38, Comp. Stat. 1921, any person owning lands that may be affected, regardless of whether or not such lands are embodied within the drainage district, has a speedy, complete, and adequate remedy at law to reimburse himself for any damages thereto that may have resulted to him by reason of the construction of such drainage district, in this, that, by the terms of said statute, he is provided with the same remedy for the collection of such damages as is provided therein for the collection of damages to property situated within the drainage district, and for which reason said statute is not in violation of the above-mentioned provisions of the Constitution of Oklahoma.

The defendants further contend that there was no taking of plaintiff's property for public use without compensation such as to entitle him to compensation.

There have been a number of cases before this court, in which various sections of the drainage act have been construed, but in no case, so far as we have been able to find, or that has been called to our attention, has this court passed upon the question of the right of a person owning land lying outside of the drainage district to recover damages resulting from the construction of a drainage ditch. In the case of

DeLozier v. Collier, Drainage Commissioner, 104 Okla. 19, 230 Pac. 240, this court held that under chapter 38, Comp. Stats. 1921, there is no authority for a drainage district to sue or be sued, and that a suit for damages would not lie against such drainage district. In the case of Prince v. Wild Horse Drainage Dist. No. 1, 145 Okla. 185, 292 Pac. 42, this court also held that there is no provision in said drainage act for an appeal from an order of the county commissioners establishing a drainage district; but it does not follow that there could be no appeal from an order allowing or disallowing damages. Sections 6057 and 6058, C. O. S. 1921, expressly provide for such an appeal. The question then to be determined is, whether, under the provisions of said drainage act, a method is provided by which a person, whose lands are without the drainage district and will suffer damages by reason of the construction of the drainage ditch, may present his claim for compensation therefor to the commissioners at the time of the organization of the drainage district, and, if the same is disallowed by them, has he the right of appeal from such decision to the district court. This question must be determined by an examination of the various sections of the statute.

Section 6040, C. O. S. 1921, in part, provides:

"The commissioners of any county shall have power, at any regular meeting, when they shall deem it to be conducive to the public health, or of public utility, or of benefit to agricultural interests, or to the soil of the lands affected, or when the same is necessary to drain any lots or lands or public or corporate roads or railroads, to cause to be constructed drains and ditches, * * * and to form one or more drainage or improvement districts, under the provisions of this chapter, and to designate each of such districts by name."

Section 6043, C. O. S. 1921, provides:

"Before the commissioners shall establish any drain or improvement district, * * * there shall be filed with the county clerk of such county a petition signed either by five or more residents of the county who claim to be affected by the proposed drain or other improvement, and to be assessed for construction thereof, setting forth the necessity therefor with the general description of the proposed drain or other improvements, the starting point, route and terminus thereof. * * *"

Section 6044, C. O. S. 1921, provides for viewers and their duties:

"Upon the filing of such petition, * * * the commissioners shall appoint as viewers three resident freeholders of the county, * * * and shall also direct the surveyor to

assist the viewers so appointed, who shall proceed at once, under the direction and order of the commissioners made therein, certified by the county clerk, to view the line of the proposed drain or improvement and report, after actual view of the premises along and adjacent thereto, whether the proposed improvement is practicable and necessary, or of private or public utility and benefit; * * * which report shall be made in writing, and shall be by order of the commissioners entered upon the records in the office of the county clerk. * * *"

Section 6045, C. O. S. 1921, is as follows:

"After the report of the viewers is filed, it shall be the duty of the commissioners, if in session, or by the county clerk, if in vacation, by an order of record, to fix the time for hearing the petition and report of viewers thereon, and to cause a notice to be given by publication for two weeks in some newspaper printed and of general circulation in the county, of the pendency of said petition, the appointment and report of said viewers, the place of beginning, route and terminus of said proposed drain or improvement, and the time at which the petition and report made by the viewers will be heard; the last publication of which notice shall be at least ten days before the date fixed for such hearing. If the commissioners shall, upon hearing, find against the improvement, they shall dismiss the petition and proceedings at the cost of the petitioners; and if such finding shall be in favor of the proposed improvements, the petitioners shall thereupon be released from their bond."

The plaintiff does not attack the proceedings under said chapter 38 on account of any irregularity in the organization of said drainage ditch. However, in reference to the last-quoted section of chapter 38, this court, in the case of Riley v. Carrico, 27 Okla. 33, 110 Pac. 738, held that the notice provided for under this section is within the legislative discretion, and is sufficient to constitute due process of law. The court, speaking through Mr. Justice Williams, in the fifth paragraph of the syllabus, states as follows:

"The Legislature has a wide discretion in determining the kind of notice to be given, though not having the power to dispense with all notice.

"5 (a) The notice should be such as would reasonably and fairly apprise the landowner of the pendency of the proceedings so as to give him an opportunity to be heard on the merits.

"5 (b) Notice by publication, consisting of two successive insertions in a paper of general circulation in the county in which the land is located, is sufficient to constitute due process of law."

The notice given under this section is not

limited to the owners of the lands within the proposed drainage district.

Section 6046, C. O. S. 1921, contains the following:

"Any person interested in land which will be affected by said proposed drain or improvement may file in the office of the county clerk, on or before the day set for the hearing of the report of the viewers, a written objection against the same, as located by the petition or report of the viewers, setting forth his grievance, which objection shall be by the commissioners filed with the petition, and heard and determined. * * *"

From this section of the statute, it will be observed that the words "land which will be affected" are embodied therein, and the grievance of any person interested is not limited to the lands embodied within said drainage district. Under the provisions of section 6048, the district court shall cause a notice to be published of the application for appointment of viewers.

Section 6049 grants discretion to viewers, in varying from the line described in the petition, and they have authority to extend the drain beyond the outlet named in the petition as far as may be necessary, not exceeding one mile, to obtain sufficient flow or outlet. "And all persons whose lands may be affected by said drain may appear before the viewers and freely express their opinions on all matters pertaining thereto."

This section fixes the power and discretion reposed in the viewers relative to changing the relative course of the drainage ditch and the place of outlet. In the case of Richards v. Rose, 119 Okla. 62, 248 Pac. 315, wherein the viewers filed their report, which, in effect, was a complete departure from the original petition filed before the county commissioners, in that it changed the drainage ditch to commence at a different point, and which would also change the flow of the water from Deer creek, and cause it to be carried to an entirely different outlet, and would result to the damage and injury of the plaintiff's property by reason of overflow, this court held that the district court had jurisdiction to enjoin the board of county commissioners from creating a drainage improvement district and digging a drainage ditch, where such board was following the report of the viewers and acting in such matter without statutory authority, or in excess of statutory authority to the hurt and damage of an individual whose lands were situated without the proposed district.

This section specifically provides that "all persons whose lands may be affected by said drain may appear before the viewers and freely express their opinions on all matters pertaining thereto." This is not limited to those persons whose lands may be within the district. Its terms are broad and clear, —"all persons whose lands may be affected."

Section 6050, C. O. S. 1921, provides for publication of notice of the hearing on the report of viewers, and embraces the following:

"He shall thereupon issue, in the name of the state, a notice, directed by name, to every person returned by the surveyor and the viewers as the owner of any lot or parcel of land affected by the proposed improvement, or of any interest therein, and also by name to all others who it may be ascertained owned such land or any part thereof, or any interest therein, and also generally to all other persons, without mentioning their names, who may own such land or any part thereof or any interest therein, notifying them of the general object and nature of the petition and report of the surveyor and viewers, and that on the day so fixed the commissioners will hear said petition and report, and any evidence that may be adduced concerning the same, and requiring the persons so named, and each of them, on the day fixed for hearing, to appear before the commissioners and show cause, if any they have, why said report should not be confirmed as made, or as the same may by the commissioners be amended, and the improvements and assessments made as therein described, or as the report may be amended. Such notice shall contain, in appropriate columns, a tabulated description, which may be abbreviated as land descriptions usually are abbreviated, of every lot or parcel of land that will be affected by the proposed improvements, and shall be published for four weeks in some newspaper, printed and of general circulation in the county, the last insertion to be before the day set for the hearing."

Here again the statute does not confine the consideration of the state to land situated within the district, but embraces all lands affected by such improvements.

Section 6051, C. O. S. 1921, contains the provisions as follows:

"In the construction of any drain or other improvement under the terms of this act for the purpose of preventing the inundation of lands or lots by flood waters, it shall be lawful to change the course or channel of any river or other stream of flowing water and the viewers provided for by this act shall award and report such damages as they may find any landowner may sustain by reason of such change in the course or channel of such river or stream and provide for appeal and payment."

Also, section 6057, C. O. S. 1921, embraces the following provision:

"Any person whose lands are affected by

the proposed improvements may, on or before the day set for hearing before the commissioners, file exceptions to the apportionments made by, and the action of the viewers, upon any claim for compensation or damages."

Also, in section 6058, C. O. S. 1921, the following paragraphs contain these provisions, among others: .

"Any person aggrieved may appeal from the order of the commissioners, and upon such appeal there may be determined either or any of the following questions:

"First. Whether just compensation has been allowed for property appropriated.

"Second. Whether proper damages have been allowed for property."

Under a reasonable construction of these provisions of the statute, any person owning land which may be affected by such drainage improvement, regardless of whether or not such land is embodied within the drainage district, has a complete and adequate remedy for any damages which may result to his premises by reason of the construction of such drainage district. Any such owner is given the opportunity to appear and be heard as to the extent of his damages, and freely express his opinion on all matters pertaining thereto. Under section 6051, supra, after the required notice has been given in reference to the hearing on the report of the viewers, such landowner, even though no mention is made in said report of any damages apportioned to his land, has the opportunity in pursuance of said notice to appear and object to such report. Under section 6057, supra, he may "file exceptions to the apportionments made by, and the action of the viewers, upon any claim for compensation or damages," and show the resulting or prospective damage, if any, to his land, even though not within the drainage district, and thereby frame the issues, and if he is aggrieved with the finding of the commissioners, he then has the right and privilege under said section 6058 to appeal to the district court on any of the following questions:

"First. Whether just compensation has been allowed for property appropriated.

"Second. Whether proper damages have been allowed for property.

"Third. Whether the property for which an appeal is prayed has been assessed more than it will be benefited, or more than its proportionate share of the cost of the improvements."

This view is supported in an opinion by the Supreme Court of Indiana in the case of Vandalia Railway Co. v. Mizer, 184 Ind. 680, 112 N. E. 522. That court, in constru-

ing the drainage act of that state, which contains provisions very similar to the provisions of our statute above quoted, said, in part, as follows:

"Is the drainage act of 1907 unconstitutional for the reasons urged? Appellant's contention is based on its construction of a portion of section 4 of the act (section 6143, Burns 1914) relating to remonstrances, which provides that, on the making of the drainage commissioner's report, 'ten days * * * shall be allowed to any owner of lands affected by the work proposed and reported benefited or damaged, to remonstrate against the report; the remonstrance * * * may be for any of the following causes: First, that the report of the commissioners is not according to law.' This is followed by the enumeration of eight other causes, applicable only, in express terms, to persons owning lands reported as affected and either damaged or benefited. The tenth statutory cause of remonstrance is grounded on the insufficiency of the proposed plan to properly drain the land affected. Other portions of the same section require a hearing by the court, and it is expressly provided that persons owning lands reported as affected, but neither damaged nor benefited by the work, shall be deemed as present in court at the final hearing, and that their lands may then be assessed, if the facts justly require it. Section 3 of the act expressly requires the drainage commissioners to find whether the costs, damages, and expenses of the work will be less than the benefits, and, if not, that the proceeding must be dismissed at petitioners' cost.

"Appellant earnestly contends that the statute did not permit it to remonstrate or file claim for damages, because in the commissioners' report, its right of way was not reported as either benefited or damaged. A similar question, arising in a proceeding under the amendatory act of 1883 (Acts 1883, p. 173), was presented in Reasoner v. Creek (1885) 101 Ind. 482, and it was there held that under that statute a landowner might remonstrate for damages, though his lands were not reported as either benefited or damaged, and that the statute contemplated the settlement, in the single proceeding, of all legitimate controversies growing out of the proposed work. See, also, Hoefgen v. Harness (1897) 148 Ind. 224, 47 N. E. 470; Keiser v. Mills (1903) 162 Ind. 366, 69 N. E. 142; Thorn v. Silver (1910) 174 Ind. 504, 520, 89 N. E. 943, 92 N. E. 161; Rayl v. Kirby (1913) 180 Ind. 553, 102 N. E. 136, 103 N. E. 440; Karr v. Board (1908) 170 Ind. 571, 85 N. E. 1; Murray v. Gault (1913) 179 Ind. 658, 670, 101 N. E. 632; Northern Ind. Land Co. v. Brown, 182 Ind. 438, 106 N. E. 706."

In the case of Reasoner v. Creek, 101 Ind. 482, cited in the Vandalia Railway Co. v. Mizer, supra, the Supreme Court of Indiana held that:

"A property owner whose land will be injured by the construction of a ditch has a right to appear and remonstrate, although no damages are assessed in his favor, and although no benefits are assessed against his land."

In that case the appellees were petitioners for the establishment and construction of a ditch. The appellants, within ten days after the filing of the report of the commissioners of drainage, filed separate remonstrances, in each of which the remonstrant alleged that he was the owner of real estate, and gave a particular description of it, and stated that he was not assessed for benefits or damages, but that his land would be greatly affected by the construction of the proposed ditch, in that its construction as proposed would overflow his land, without giving him any outlet for the drainage thereof, thereby rendering it impossible for him to properly drain and cultivate it, and that the land would be damaged because the construction would cause the overflow of the land. On motion of the appellees the remonstrances were rejected, and it was the ruling on that motion that was presented for review. The court, in passing on the question, in the body of the opinion, in part, states:

"It seems clear on principles of natural justice that the law will not allow a man's land to be directly and materially injured by a public work of this character, and yet leave him remediless. It is evident, also, that such a course would be antagonistic to the spirit of the constitutional provision, that no man's property shall be taken for a public use without just compensation. So, too, it seems that the public and adjacent land proprietors cannot justly secure a benefit to themselves at the expense of a serious injury to another's property. * * * It is true that there does not appear to be a direct taking, but an injury to land to the extent of several hundred dollars, is, in a restricted sense, at least, a taking. We suppose that if the construction of a ditch would submerge adjacent lands and render them valueless, there could be no doubt that the owners would be entitled to compensation. But, whether there was or was not a seizure of property, there was, upon the case made by each of the remonstrances, a direct and material injury, and in our judgment the statute does not mean to authorize the construction of a ditch without compensation to those whom it would directly injure. Whether a statute would be valid which undertook to authorize the construction of a ditch without providing for compensation for injuries resulting to private property, we need not decide, as our opinion is that the statute contemplates the assessment and payment of damages to all who suffer a direct injury from the construction of a ditch. * * *

"We can see no reason for holding that a property owner must be denied compensation for injuries merely because the ditch commissioners have not deemed it proper to investigate and report upon his rights, or because the petitioners have not described his land in their petition. The ultimate and substantial question is, Will the complainant's land be directly injured? not was his land described in the petition or mentioned in the report of the commissioners? It is not in the power of the petitioners or of the commissioners to cut him off from his right to compensation, for that right does not depend upon what the petitioners or the commissioners may do, or omit to do, but upon the fact of a direct and material injury to his land. If it is ascertained that he will sustain a legal injury entitling him to compensation, the law awards it to him, and no act or omission of petitioners or commissioners can keep it from him. If the facts and the law entitle him to compensation, what has been done or left undone by the petitioners and commissioners is of no importance. * * *

"We can conceive of no just reason why the landowner may not invoke the assistance of the courts for the vindication of his right, by becoming a party to the original cause and asserting his rights by a remonstrance. Such a procedure has the great merit of simplicity and directness; it has also the merit of preventing multiplicity of actions, and of settling the controversy before the work of constructing the ditch has been actually entered upon. These are important considerations, for the law abhors a multiplicity of actions, encourages diligence, seeks simplicity, and discourages circumlocution. Where there is a direct road to the complete settlement of a controversy, it is always preferable to a roundabout one. We are to keep these fundamental doctrines in mind in construing the statute, for we are not to presume, unless the rigor of the language drives us to that course, that the Legislature meant to overthrow settled and salutary principles. We find nothing in the statute requiring us to deny a landowner, who will be injured by the construction of a ditch, the right of remonstrating, although no benefits are assessed against him, nor damages assessed in his favor. The language of the statute is this: 'Upon the making of such report to the court, ten days shall be allowed to any owner of lands affected by the work proposed to remonstrate against the report. * * *'

"A person whose land is injured to the extent of $700, or to any material extent, comes within the description 'any owner of lands affected by the work proposed.' It is true that in enumerating the causes for a remonstrance, the question of benefits and damages appears to be restricted to persons actually assessed, but there are other causes which it seems clear may be urged by persons not assessed. This is notably true of the

first, seventh, eighth, and ninth causes enumerated. But we do not think that the failure to enumerate the causes properly should be treated as denying a landowner, whose property is affected, the right of remonstrating, since such construction would completely nullify the clause we have quoted, and as the rule is, that all the words of a statute shall be given effect, and no word or clause be treated as meaningless, or superfluous, we must avoid that result if possible. This can be accomplished without doing violence to the letter or spirit of the act, by holding that the enumeration is not complete or exhaustive as to parties against whom no assessments are reported."

It is urged that this procedure indirectly is in conflict with sections 23 and 24 of article 2 of the Constitution of the state of Oklahoma.

Section 23 provides:

"No private property shall be taken or damaged for private use with or without compensation, unless by corsent of the cwner."

Section 24 provides:

"Private property shall not be taken or damaged for public use without just compensation. * * *"

In the case at bar, no question has been raised in reference to the sufficiency of the notices provided in the drainage act concerning the creation of the drainage district. Plaintiff is charged, as a matter of law, with knowledge of the drainage act in question, and all of its provisions, permitting him to file his remonstrance, exceptions, and objections to the organization of the drainage district. Even though it could be said that he had no personal notice of the proceedings had in reference to the creation and organization of the drainage district in question, this would not be without due process of law, provided the statutory notices were given, as is conceded to be the fact in this case, provided at some stage of the proceedings he is given an opportunity for an adequate hearing upon the question of benefits and damages, which opportunity was afforded to him under the provisions of the aforesaid act.

We are of the opinion that the provisions of chapter 38, C. O. S. 1921, known as the "Oklahoma State Drainage Act," which provides for the assessments of benefits and for collection of damages for property taken or damaged in the construction of drainage ditches, is not in conflict with sections 23 and 24 of article 2 of the Constitution of Oklahoma, and that, under said provisions of said act, the plaintiff in this case had an adequate remedy for the collection of the damages to his land, if any, resulting from the organization and construction of the drainage ditch at the time of its formation.

Owing to our views herein expressed, it becomes unnecessary to consider the constitutionality of the drainage act upon the theory that the same comes under the police power of the state, and that damages resulting to property through the carrying out of such a scheme are damnum absque injuria, and not in violation of the Fourteenth Amendment of the Constitution of the United States.

The judgment of the trial court, sustaining the demurrer to the first cause of action of plaintiff's petition, is affirmed, and its judgment sustaining the demurrer to the second cause of action is reversed in so far as it pertains to the Oklahoma Dredging Company, and in all other respects affirmed.

CLARK, V. C. J., and HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. LESTER, C. J., and RILEY, and KORNEGAY, JJ., dissent.